■ Isaac Ainetchi et al., Respondents-Appellants, v 500 West End LLC, Appellant-Respondent. [859 NYS2d 121]—

Judgment, Supreme Court, New York County (Debra A. James, J.), entered September 5, 2006, after a nonjury trial, inter alia, awarding plaintiffs the mechanical room, legal fees and disbursements to the extent incurred in prosecuting their first cause of action, and a credit of $24,902.50 on their reimbursement and corrective claims, and awarding defendant $190,329.87 plus interest, unanimously modified, on the law, the facts and in the exercise of discretion, to the extent of staying enforcement of the judgment and remanding the matter for further proceedings consistent herewith, and otherwise affirmed, without costs.

The trial court correctly found that defendant substantially

---

performed the construction contract. In arguing otherwise, plaintiffs incorrectly include amounts that they received or claim they should have received as reimbursement for their own expenditures on the construction; however, since this was work that was actually performed, the only issue is who was responsible for payment. Plaintiffs also incorrectly include amounts that they claim were awarded to them in the body of the order underlying the judgment but were erroneously omitted from the conclusion of that order and the final judgment; however, it is clear that the paragraphs appearing to award plaintiffs these additional amounts were erroneously left in the body of the order and were meant to be taken out.

In any event, there is no merit to plaintiffs' claims of nonperformance, which involve three items—allegedly improper construction of the interior staircase and purported damages to the penthouse floors and terrace—for which plaintiffs claim a right to reimbursement for sums paid by them to contractors. Concerning the staircase, plaintiffs rely on the June 21, 2001 or "BKS" plans and the as-built drawings, asserting that the stairs were not built as they appear in the plans, and that they never agreed in writing to a modification of the plans as required by the parties' agreements. However, the record shows that the parties regularly modified the plans and plaintiffs' payment schedules without any writing whatsoever (*see Rose v Spa Realty Assoc.*, 42 NY2d 338, 343-344 [1977]), and no basis exists to disturb the trial court's findings crediting the testimony of defendant's witness that the modification to the staircase was discussed with and agreed to by plaintiff Ainetchi, testimony supported by Ainetchi's daily presence at the job site and the fact that the changes to the staircase were readily apparent (*see Matter of Albrecht Chem. Co. [Anderson Trading Corp.]*, 298 NY 437, 440 [1949]).

Concerning the flooring, no basis exists to disturb the trial court's findings crediting defendant's expert (*see Watts v State of New York*, 25 AD3d 324 [2006]), who testified that the minor "cupping" was not caused by the lack of a vapor barrier but was a natural consequence of the width of the wood, to which plaintiffs had agreed. Concerning the terrace, the record shows that the parties agreed to change the initial plans by expanding the scope of the terrace. Defendant's witness credibly testified to conversations with Ainetchi regarding these changes, and Ainetchi's direct payment to the vendors for the additional materials required by the changes substantiates his agreement to assume this cost. Ainetchi's testimony that he paid these vendors only because they threatened not to do the work unless

they were paid by him was rendered incredible by invoices showing that he paid the contractors after the work was completed.

The trial court properly precluded plaintiffs' expert's report as to the cost of repairs, and certain testimony regarding these costs, as they were based largely on unidentified subcontractors' quotes unsupported by any evidence of reliability (*see Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725-726 [1984]; *cf. Sigue v Chemical Bank*, 284 AD2d 246, 247 [2001]). While some of the subcontractors later testified, arguably satisfying the test in *Hambsch*, there is no indication that plaintiffs sought to have the court reconsider its ruling after this testimony. In any event, any error was harmless as plaintiffs' claims with respect to the staircase and the terrace were, as noted, properly rejected for reasons having nothing to do with the contractors' estimates, and, with respect to the flooring, the court heard the testimony of plaintiffs' contractor but properly rejected it on credibility grounds.

We modify, however, to vacate that portion of the court's verdict and judgment awarding the mechanical room to plaintiffs, the purchasers of Penthouse West. There is conflicting evidence in the record regarding whether the mechanical room at issue, designated "W-212" on the primary architectural plans, belongs to Penthouse West or Penthouse East.

Plaintiffs argue that because the relevant purchase agreement identifies Penthouse West as the unit displayed in the BKS plans and the plans accompanying the condominium plan declaration, and such plans clearly designate the subject mechanical room as "W-212," then the mechanical room is necessarily part of Penthouse West. Moreover, Ainetchi himself testified that he discussed this particular room as being his unit's mechanical room with defendant's builder, and that he stored light fixtures in such room and had a key to it prior to the aborted closing. Plaintiffs also suggest that certain mechanical equipment or conduits for Penthouse West are located in, or are connected to, room W-212.

Defendant, on the other hand, points out that the room designated W-212 is physically connected to Penthouse East, and is not contiguous at all to Penthouse West. Defendant also notes that the floor plans for Penthouse West attached to the original offering plan do not include the mechanical room eventually designated W-212. It was further noted that the "Description of Additions" attachment to the offering plan provides that "[m]echanical equipment for Penthouse West will be located inside the unit as well as on the roof of this [u]nit," and that room W-212 clearly is not "inside the unit." Finally, defen-

dant argues that the ambiguity in the BKS plans is demonstrated by the fact that there are two separate rooms designated "W-212" on such plans. Clearly, a drafting error exists on the BKS plans, making it difficult to determine whether room W-212 was conveyed to plaintiffs as part of Penthouse West.

Although the trial court acknowledged that the BKS plans were ambiguous, it nevertheless excluded the testimony of the drafter of the plans, called by defendant to testify that the designation "W-212" was a scrivener's error made during a modification to the plans. The court initially excluded the testimony on hearsay grounds, and prohibited further attempts by defense counsel to rephrase or to introduce documentary evidence as an improper attempt to reform the contract without making it the subject of a counterclaim.

The court's exclusion of the drafter's testimony was an improvident exercise of discretion and was not harmless. The testimony regarding the scrivener's error was clearly relevant and based on personal knowledge; any hearsay problem could easily have been obviated. Given the importance of this testimony to a crucial issue in the case, and because plaintiffs had the opportunity to offer their own testimony concerning ownership of the room, we find that the trial court should not have excluded the testimony, which should be admitted upon retrial. Defendant's failure to amend its counterclaim is no bar to raising this argument at trial, given the court's established authority to permit amendment of the pleadings to conform to the proof at trial (CPLR 3025 [c]). In light of the erroneous evidentiary ruling, we remand for a new trial limited to the issue of whether the mechanical room designated W-212 on the BKS plans and other plans is part of Penthouse East or Penthouse West.

The court properly awarded plaintiffs attorneys' fees solely on their claim for specific performance associated with closing on the penthouse. The parties' settlement agreement indicated that once any unit in the building closed, plaintiffs were entitled to close on the penthouse, regardless of the status of construction, its readiness for occupancy, or plaintiffs' payment of the entire purchase price, all such issues to survive the closing. Thus, plaintiffs had an unqualified right to close, and, on that issue, they prevailed and are entitled to attorneys' fees (*see Board of Mgrs. of 55 Walker St. Condominium v Walker St.*, 6 AD3d 279 [2004]). Any hearing on the amount of attorneys' fees to be awarded should await the outcome of the trial relating to the mechanical room.

Plaintiffs' request to strike the supplemental record is denied. Concur—Lippman, P.J., Gonzalez, Sweeny and Catterson, JJ.