In the Matter of the Arbitration between ALBRECHT CHEMICAL Co., INC., Respondent, and ANDERSON TRADING CORP., Appellant.

Argued January 6, 1949; decided March 3, 1949.

*Burton S. Cooper* for appellant. To compel arbitration, the contract therefor must be in writing. (Civ. Prac. Act, § 1449; *Columbia Malting Co.* v. *Clausen-Flanagan Corp.*, 3 F. 2d 547; *Matter of Tanenbaum Textile Co.* v. *Schlanger*, 287 N. Y. 400.)

*George M. Szabad, Joseph G. Blum* and *Herbert Goldenberg* for respondent. I. The written purchase orders containing the arbitration clause are binding on appellant though not signed

by it. (*Newburger* v. *American Sur. Co.,* 242 N. Y. 134; *Matter of Japan Cotton Trading Co.* v. *Farber,* 233 App. Div. 354; *Matter of Exeter Mfg. Co.* v. *Marrus,* 254 App. Div. 496.) II. The written purchase orders containing the arbitration clause were accepted by appellant and created valid agreements to arbitrate any disputes arising thereunder. (*Matter of Tanenbaum Textile Co.* v. *Schlanger,* 287 N. Y. 400; *More* v. *New York Bowery Fire Ins. Co.,* 130 N. Y. 537; 1 Williston on Contracts [Rev. ed.], §§ 90A, 90B; Restatement, Contracts, p. 872; *Matter of Exeter Mfg. Co.* v. *Marrus,* 254 App. Div. 496; *Matter of Japan Cotton Trading Co.* v. *Farber,* 233 App. Div. 354.)

FULD, J.  In May of 1948, Anderson Trading Corp., as seller, and Albrecht Chemical Co., Inc., as buyer, arranged over the telephone for the sale and purchase of 10,000 pounds of a certain dye.  Thereafter, Albrecht sent the seller two '' purchase orders '', each for 5,000 pounds of dye.  In addition to describing the merchandise and specifying their quantity and price, each order bore on its face the notation '' KINDLY SIGN AND RETURN ONE COPY FOR OUR RECORDS '', and, on its reverse side, eleven separately numbered terms and conditions.  One of these conditions provided for the arbitration of any controversy or claim that might arise between the parties (¶ 11), and another recited that the '' order and the terms and conditions thereof shall be deemed accepted '' by the seller if he should fail to advise the buyer to the contrary within ten days (¶ 9).

The seller neither signed nor returned the purchase orders. Instead, it sent its own memoranda of sale to the buyer, and in them made no reference to the buyer's purchase order or to any provision of it.  About ten days later, on May 21st, Albrecht purchased a further quantity of the dye; on this occasion, the only document issued was the seller's memorandum of sale. During the course of the following month, Albrecht, complaining that the goods were defective, demanded that the matter be arbitrated as provided in its purchase order.  Anderson refused to accede to the request, maintaining that it had never agreed to arbitrate.

The purchaser thereupon initiated the present proceeding. The court at Special Term, holding that the seller's explicit consent to arbitrate was unnecessary in view of its failure

to indicate disagreement, directed arbitration, and the Appellate Division affirmed. We see no alternative but to reverse, for the seller never agreed or bound itself to arbitration.

In the first place, considering the affidavits which are before us, it may be that a contract was consummated by telephone, and, if that is so, nothing more need be said. Clearly, such an oral contract could not have created a binding agreement to arbitrate future differences, even if the parties had so intended. "A contract to arbitrate a controversy thereafter arising between the parties must", the Civil Practice Act is explicit, "be in writing" (Civ. Prac. Act, § 1449).

We go further, however, and hold that, even if the terms of the agreement were not finally fixed by the oral communications over the telephone and remained open to further negotiation, the subsequent written exchanges did not commit the seller to arbitrate. The buyer's purchase order was at best merely an offer or a counteroffer, and its retention by the seller without objection may not be deemed ratification of, or acquiescence to, the terms which it contained.

This follows from the settled rule that, where the recipient of an offer is under no duty to speak, silence, when not misleading, may not be translated into acceptance merely because the offer purports to attach that effect to it. (See *Matter of Tanenbaum Textile Co.* v. *Schlanger,* 287 N. Y. 400, 404; *Poel* v. *Brunswick-Balke-Collender Co.,* 216 N. Y. 310, 318 *et seq.*; *More* v. *New York Bowery Fire Ins. Co.,* 130 N. Y. 537, 545, 547; see, also, 1 Williston on Contracts [Rev. ed.], § 91, pp. 279–280; Restatement, Contracts, § 72 [1].) That fundamental principle we stated in the *Tanenbaum* case (*supra*), which also concerned the binding effect of an arbitration clause (287 N. Y. at p. 404): " ' A party cannot be held to contract where there is no assent. Silence operates as an assent and creates an estoppel only when it has the effect to mislead * * *. When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings and misleads another, then his silence may be deemed to be acquiescence.' "

It is to be observed that, in the cases wherein acceptance has been thrust upon a party as the result of his silence, something more than here was present. For example, the parties may

nave been advised and warned by a previous course of dealings that inaction would be taken as assent (see *Matter of Catz Amer. Sales Corp. [Holleb & Co.]*, 298 N. Y. 504, affg. 272 App. Div. 689; see, also, 1 Williston on Contracts, *op. cit.*, § 91B; Restatement, Contracts, § 72 [1], subd. [c]), or, acting through a common agent, they may have impliedly authorized him to bind them without more to various provisions, including one on arbitration. (See *Matter of Catz Amer. Sales Corp. [Holleb & Co.]*, *supra.*)

In the present case, there is no basis for finding that the seller had a duty to speak out and reject the arbitration clause in the buyer's purchase order. Those orders were not issued by an agent acting for both parties; and obviously the seller's silence could not have been misleading. Indeed, on each occasion, instead of heeding the direction to " SIGN AND RETURN " the order, the seller dispatched its own memorandum. In whatever light we view that document — as affirmation of an agreement closed over the telephone, as an offer based upon previous negotiations, or as a counteroffer to the purchase order — it did not amount to acceptance of the arbitration provision. Implicit in the seller's conduct in sending its own memorandum was notice that it did not accede to the buyer's terms; no positive rejection was necessary to avoid them. In point of fact, there is strong indication that the buyer could not have harbored any expectation that arbitration had been assented to, for the third transaction, that of May 21st, was executed without any purchase order from the buyer and with no mention whatever of a provision to arbitrate.

In short, neither expressly nor impliedly, neither directly nor indirectly, did the parties ever discuss arbitration or bargain about it, and certainly they reached no agreement thereon. (See *Matter of Kahn [Nat. City Bank]*, 284 N. Y. 515, 523; *Matter of Bullard [Grace Co.]*, 240 N. Y. 388, 395.) The buyer's only recourse for alleged breach is to the courts.

The orders appealed from should be reversed, and the petition dismissed, with costs in all courts.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND and DYE, JJ., concur.

Orders reversed, etc.