[Civ. No. 38653. Second Dist., Div. Four. May 30, 1972.]

WINDSOR MILLS, INC., Plaintiff, Cross-defendant and Respondent, v. COLLINS & AIKMAN CORPORATION, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Loeb & Loeb and Howard I. Friedman for Defendant, Cross-complainant and Appellant.

Harvey Fierstein for Plaintiff, Cross-defendant and Respondent.

## OPINION

**DUNN, J.**—Defendant Collins & Aikman Corporation appeals from an order granting a preliminary injunction enjoining defendant from prosecuting arbitration proceedings during the pendency of plaintiff's action, and from a judgment denying defendant's cross-petition to compel arbitration.

Windsor Mills, Inc. filed a suit in six causes of action against Collins & Aikman Corporation and others. The first five causes of action sought damages for alleged defects in yarn; the sixth sought preliminary and permanent injunctions against defendants Collins & Aikman Corporation and the American Arbitration Association, enjoining arbitration proceedings previously initiated by Collins & Aikman in New York.[1] The court issued an order to show cause why a preliminary injunction should not issue. (Code Civ. Proc., § 527.) Defendant Collins & Aikman filed an answer denying material allegations in plaintiff's complaint together with a counterclaim seeking payment for yarn sold, at the same time filing a cross-petition for an order to arbitrate. (Code Civ. Proc., § 1281.2.) It alleged the existence of a written arbitration agreement and plaintiff's refusal to arbitrate. Defendant also moved for an order staying proceedings pending determination of its cross-petition. (Code Civ. Proc., § 1281.4.) Plaintiff filed an answer to the cross-petition denying the existence of any arbitration agreement.

A hearing was had at which the verified pleadings and various declarations were received in evidence. These showed: plaintiff is a California corporation engaged in the business of manufacturing carpets; defendant Collins & Aikman is a Delaware corporation authorized to transact and transacting business in California; on several occasions between January and March 1970 Lawrence Petal, plaintiff's president, ordered in Los Angeles a total of 55,000 pounds of yarn from Toli Simos, west coast sales representative of Collins & Aikman; all of the orders were placed orally, but at least one was evidenced by a written purchase order from plaintiff to defendant; each of the orders was transmitted to defendant in New York for approval.

As each order was received, defendant completed a printed form entitled "Acknowledgment of Order" and sent a copy to plaintiff; typed in appropriate boxes on the front of each form was the date of the order, defendant's order number, shipping instructions, a description of the yarn

---

[1]American Arbitration Association filed with the court an agreement to be bound by the court's decision, but did not otherwise appear.

ordered and the quantity and price thereof. Near the bottom of the form the following appeared in fine print: "this order is given subject to all of the terms and conditions on the face and reverse sides hereof including the provisions for arbitration and the exclusion of warranties all of which are accepted by buyer supersede buyer's order form if any and constitute the entire contract between buyer and seller this order shall become a contract as to the entire quantity specified either (A) when signed and delivered by buyer to seller and accepted in writing by seller or (B) when buyer has received and retained this order for ten days without objection or (C) when buyer has accepted delivery of any part of the merchandise specified herein or has furnished to seller specifications or assortments delivery dates shipping instructions or instructions to bill and hold or when buyer has otherwise indicated acceptance of the terms hereof [.]"[2] Beneath this provision were spaces for the signatures of buyer and seller: none of the forms was signed.

On the reverse side of the form, under the heading "Terms of Contract Sale," there appeared in small print the following provision, among many others: "15. ARBITRATION: Any controversy arising out of or relating to this contract shall be settled by arbitration in the City of New York in accordance with the Rules then obtaining of the American Arbitration Association or the General Arbitration Council of the Textile Industry, whichever shall be first selected by the party instituting said arbitration. . . . The parties consent to the jurisdiction of the Supreme Court of the State of New York, and of the United States District Court for the Southern District of New York, whichever is first selected by the party moving to confirm said award. The parties further consent that any process or notice of motion or other application in either of said Courts or a Judge thereof, may be served outside the State of [sic] Southern District of New York by certified mail or by personal service provided a reasonable time for appearance is allowed, or in such other manner as may be permissible under the Rules of said Court."

Of the yarn ordered, 30,000 pounds were shipped to and received by plaintiff; plaintiff complained of the quality of the yarn and instructed defendant not to ship the remaining 25,000 pounds; plaintiff did not pay for any of the yarn ordered; on October 5, 1970, pursuant to the arbitration clause in the Acknowledgment of Order forms, defendant filed in New York a demand for arbitration with the American Arbitration Association; a copy of the demand was sent to plaintiff who thereafter com-

---

[2]This provision's nine printed lines are compressed into 5/8" of vertical space and 5-3/16" of lateral space.

menced the instant action for damages and for an injunction staying the arbitration proceedings.

In his declaration, Toli Simos stated that when each of the orders was placed he informed Lawrence Petal that "New York had to clear him, particularly as to credit," and that he then would receive "appropriate contractual instruments" from New York. In his opposing declaration, Petal agreed he was told his orders were subject to credit approval but denied anything was stated about "appropriate contractual instruments"; he also stated that, although the Acknowledgment of Order forms were received by plaintiff, they were not brought to his attention nor did he see them at all until after arbitration proceedings had been initiated by Collins & Aikman. Another declaration, reciting the substance of testimony given by Simos at a deposition, asserted that Simos admitted he had copies of the forms when Petal was ordering the yarn but he did not show the forms to Petal or discuss with him the arbitration provision or any of the other provisions printed on the form.

Findings of fact and conclusions of law were signed and filed. The court found as facts, among others, that: plaintiff was not informed the Acknowledgment of Order forms contained reference to arbitration of disputes; such provisions were in small print and were inconspicuous; plaintiff signed none of the forms and had no actual knowledge of the provision until it received Collins & Aikman's demand for arbitration; to the extent that the forms provided for arbitration, they effected a material alteration of the original orders placed by plaintiff and constituted a counteroffer which never was accepted by plaintiff; at no time did plaintiff agree to arbitrate any disputes with defendant.

Court orders were made denying Collins & Aikman's motion for a stay of proceedings and granting to plaintiff a preliminary injunction enjoining defendant and the American Arbitration Association[3] from prosecuting arbitration proceedings; judgment was entered against defendant on its cross-petition for an order to arbitrate.

Defendant appeals from the order granting the preliminary injunction (Code Civ. Proc., § 904.1, subd. (f); *Monterey Club* v. *Superior Court* (1941) 44 Cal.App.2d 351, 353 [112 P.2d 321]) and from the judgment on its cross-petition. (Code Civ. Proc., § 1294, subd. (a); *Berman* v. *Renart Sportswear Corp.* (1963) 222 Cal.App.2d 385, 387 [35 Cal.Rptr. 218].)

Code of Civil Procedure section 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter

---

[3]See footnote 1.

arising is valid, enforceable and irrevocable, upon such grounds as exist for the revocation of any contract." Section 1281.2 provides in part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy *if it determines that an agreement to arbitrate the controversy exists,* . . ." (Italics added.)

Defendant contends the trial court erred in its finding that there was no written arbitration agreement between the parties, arguing the findings are unsupported by substantial evidence. Specifically, defendant contends: ". . . the only contracts which could have come into being with respect to the transactions between respondent and appellant had to be" the Acknowledgment of Order forms. The contention is based upon the argument that there was no evidence the oral orders placed by plaintiff contained any of the specific terms of sale, such as price and delivery, necessary to create a valid offer which could be accepted so as to form a binding contract; therefore, the Acknowledgment of Order forms did not constitute a counteroffer which varied the terms of plaintiff's orders (offers) by including arbitration provisions; rather, the forms were offers by defendant to sell; plaintiff accepted these offers by its conduct in retaining the forms without objection and by accepting the yarn, and therefore became bound by the arbitration clause contained in the forms.

We need not decide whether the forms were offers or counteroffers, for in either event plaintiff's consent to, or acceptance of, the arbitration provision was necessary to create an agreement to arbitrate. (See Civ. Code, §§ 1550, 1585; *American Building Maintenance Co.* v. *Indemnity Ins. Co.* (1932) 214 Cal. 608, 615 [7 P.2d 305]; *Four Oil Co.* v. *United Oil Producers* (1904) 145 Cal. 623, 624-625 [79 P. 366]; *Kahn* v. *Lischner* (1954) 128 Cal.App.2d 480, 486 [275 P.2d 539]; *Bullock* v. *McKeon* (1930) 104 Cal.App. 72, 79 [285 P. 392].)

It is true that the terms of a contract ordinarily are to be determined by an external, not an internal, standard; the outward manifestation or expression of assent is the controlling factor. (*King* v. *Stanley* (1948) 32 Cal.2d 584, 591 [197 P.2d 321]; *Brant* v. *California Dairies, Inc.* (1935) 4 Cal.2d 128, 133 [48 P.2d 13].) Accordingly, an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains. (See: *Constantian* v. *Mercedes-Benz Co.* (1936) 5 Cal.2d 631, 634 [55 P.2d 841]; *Larrus* v. *First National Bank* (1954) 122 Cal.App.2d 884, 889-890 [266 P.2d 143]; *Hunter* v. *Sparling* (1948) 87 Cal.App.2d 711, 724-725 [197 P.2d 807]; *Cunningham* v. *International Committee of*

*Y.M.C.A.* (1921) 51 Cal.App. 487, 490-491 [197 P. 140]; 1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, §§ 30, 32, pp. 39, 40-42.) However, when the offeree does not know that a proposal has been made to him this objective standard does not apply. (*American Building Maintenance Co.* v. *Indemnity Ins. Co., supra,* 214 Cal. at pp. 615-616; 1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, § 56, pp. 62-63; Rest., Contracts, §§ 23, 55.) ■ Hence, an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious. (See: *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 879-882 [27 Cal.Rptr. 172, 377 P.2d 284]; *Los Angeles Inv. Co.* v. *Home Sav. Bank* (1919) 180 Cal. 601, 612-614 [182 P. 293, 5 A.L.R. 1193]; *India Paint Co.* v. *United Steel Prod. Corp.* (1954) 123 Cal.App.2d 597, 610-611 [267 P.2d 408]; 1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, § 33, pp. 42-43.)

■ This principle of knowing consent applies with particular force to provisions for arbitration. Thus, in *Commercial Factors* v. *Kurtzman Bros.* (1955) 131 Cal.App.2d 133 [280 P.2d 146] defendants, whose place of business was in California, went to New York and there ordered goods from plaintiff's assignor. The salesman wrote the orders on order blanks which stated on the face that the orders were subject to the terms on the reverse side of the blanks. On the reverse was a provision for arbitration. Defendants did not see the reverse side of the blanks when the orders were placed nor was there conversation concerning the arbitration provision; defendants' attention was not called to the provision. Defendants received the goods but refused to pay for some of them. Their account was assigned to plaintiff who secured in New York, upon substituted service, a judgment affirming an arbitration award against defendants. Plaintiff thereafter brought an action in California on the judgment. The trial court rendered judgment for defendants on the grounds that the New York judgment was void for lack of personal service and that no arbitration agreement was entered into between the parties. In affirming the judgment, the Court of Appeal stated (pp. 135-136): "And while it is undoubtedly true that the law highly approves the settlement of disputes by arbitration, it is equally true that buyers in one state should not be forced into arbitration in another state unless there has been a definite contract knowingly entered into containing such a provision. . . . [¶] As said in *Arthur Phillips Export Corp.* v. *Leathertone, Inc.,* 275 App.Div. 102 [87 N.Y.S.2d 665], 'If a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose shall be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties

thereto. Here, appellant says it was wholly unaware of the existence of the arbitration clause set forth on the reverse side of the confirmation order. . . . a party should not be bound by clauses printed on the reverse side of a document unless it is established that such matters were properly called to its attention and that it assented to the terms thereof . . . in short, neither expressly or [*sic*] impliedly, either directly, or indirectly, did the parties ever discuss arbitration or bargain about it, then certainly they reached no agreement thereon.' "

In the case at bench the trial court found that the provision for arbitration was in small print, was not conspicuous, that plaintiff was not advised the forms contained such a provision and that plaintiff did not have actual knowledge of the provision until after it had received defendant's demand for arbitration. It follows there was no agreement by plaintiff to arbitrate, regardless of its outward manifestations of apparent assent as exhibited by its retention of the forms without objection and its initial acceptance of the yarn.

Defendant argues this conclusion cannot stand in view of Commercial Code sections 2201 and 2207. Section 2201 provides in part: "(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless . . . (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirement of subdivision (1) [the statute of frauds] against such party unless written notice of objection to its contents is given within 10 days after it is received." Section 2207 provides in part: "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms. (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless . . . (b) They materially alter it. . . ."

Assuming both parties were "merchants" as that term is defined in Commercial Code section 2104,[4] sections 2201 and 2207 do not support

---

[4]Commercial Code section 2104: "(1) 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction . . . (3) 'Between merchants' means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants."

defendant's contention that the Acknowledgment of Order forms created a written agreement to arbitrate.

Section 2201, subdivision (2) merely defines some formal requirements necessary to satisfy the statute of frauds in transactions between merchants. (See: Uniform Com. Code Comment No. 3 to § 2201.) The issue here is not compliance with the statute of frauds; it is whether the arbitration provision constituted an "agreement to arbitrate" within the meaning of Code of Civil Procedure sections 1281 and 1281.2.

Section 2207 likewise fails to support defendant's position, for it is clear that a provision for arbitration inserted in the acceptance or confirmation of an offer to purchase goods "materially alters"[5] the offer. (See Uniform Com. Code Comment Nos. 2, 3, 4.) Such is the conclusion reached by a New York court which, in discussing the effect of section 2207, stated: ". . . the arbitration clause, whether viewed as a material alteration under subsection (2), or as a term nullified by a conflicting provision in the buyer's form, would fail to survive as a contract term. In the light of the New York cases, at least, there can be little question that an agreement to arbitrate is a material term. . . ." (*Application of Doughboy Industries, Inc.* (1959) 17 App.Div.2d 216 [233 N.Y.S.2d 488, 495-496].)

Finally, defendant contends that under the law of New York[6] the provision for arbitration created a binding written agreement to arbitrate. We do not concur. In *Application of Doughboy Industries, Inc., supra,* 17 App.Div.2d 216 [233 N.Y.S.2d 488], the court stated that a special rule had been formulated in New York with respect to arbitration clauses, namely, that "the agreement to arbitrate must be direct and the intention made clear, without implication, inveiglement or subtlety." (P. 492.) The court also indicated that the "threshold for clarity of agreement to arbi-

---

[5]In New York, where the arbitration was to take place under the terms of the provision, arbitration has been defined as " 'a contractual method for settling disputes in which the parties create their own forums, pick their own judges, waive all but limited rights of review or appeal, dispense with the rules of evidence, and leave the issues to be determined in accordance with the sense of justice and equity that they may believe reposes in the breasts and minds of their self-chosen judges.' " (*Schiller* v. *Cosmopolitan Mutual Cas. Co.* (1959) 20 Misc.2d 206 [191 N.Y.S.2d 852, 855].)

[6]The Acknowledgment of Order forms provided, in paragraph 16 on the reverse side under "Terms of Contract Sale" that: "This contract is made in New York and its validity shall be determined under the laws of New York." The parties may expressly agree on what law shall govern their contract. (11 Cal.Jur.2d 137, Conflict of Laws, § 55.) Although the form may be characterized as a contract of adhesion (*Player* v. *Geo. M. Brewster & Son, Inc.* (1971) 18 Cal.App.3d 526, 533 [96 Cal.Rptr. 149]), the choice-of-law provision contained in such a contract is usually respected. (Rest. 2d Conflict of Laws, § 187, com. b.)

trate" might be "greater than with respect to other contractual terms." (P. 492.) In *Albrecht Chemical Co.* v. *Anderson Trading Corp.* (1949) 298 N.Y. 437 [84 N.E.2d 625] the court refused to enforce an arbitration clause contained in a buyer's purchase order, stating (p. 627): "In short, neither expressly nor impliedly, neither directly nor indirectly, did the parties ever discuss arbitration or bargain about it, and certainly they reached no agreement thereon. . . . The buyer's only recourse for alleged breach is to the courts." (See also: *Riverdale Fabrics Corp.* v. *Tillinghast-Stiles Co.* (1954) 306 N.Y. 288 [118 N.E.2d 104, 105, 41 A.L.R.2d 867]; *Tanenbaum Textile Co.* v. *Schlanger* (1942) 287 N.Y. 400 [40 N.E.2d 225]; *Arthur Philip Export Corp.* v. *Leathertone* (1949) 275 App.Div. 102 [87 N.Y.S.2d 665].)

The pertinent question is: was there an agreement to arbitrate? A written *agreement* to arbitrate is required by Code of Civil Procedure sections 1281 and 1281.2. The evidence supports the trial court. Thus, arbitration was not discussed by the parties; although defendant's sales representative had copies of the Acknowledgment of Order forms when the orders were placed, he did not show the forms to plaintiff, much less point out the arbitration provision therein; the forms were not contractual in form and the provision was inconspicuous; plaintiff did not learn of the provision until after defendant had demanded arbitration. Under these circumstances, the trial court was justified in finding the parties did not reach an agreement to arbitrate.

The order and the judgment are affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied June 21, 1972, and appellant's petition for a hearing by the Supreme Court was denied August 16, 1972. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.