Filed 12/23/14  Storquest Oakland v. East Bay Orthopedic Specialists CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STORQUEST OAKLAND, LLC,<br><br>  Cross-complainant and Appellant,<br><br>v.<br><br>EAST BAY ORTHOPEDIC SPECIALISTS MEDICAL CORPORATION,<br><br>  Cross-defendant and Appellant. | A134049<br><br>(Alameda County<br>Super. Ct. No. RG05236587) |

## I.  INTRODUCTION

East Bay Orthopedic Specialists Medical Corporation (East Bay) leased a storage space in a self-storage facility owned by Storquest Oakland, LLC (Storquest).  Debra Hart, an employee of East Bay, sued Storquest after sustaining injuries at the facility. Storquest cross-complained against East Bay for express indemnity and breach of contract, based on an indemnity provision in the rental agreement between East Bay and Storquest.  The trial court ruled the indemnity provision required East Bay to indemnify and defend Storquest against Hart's claims, but held Storquest could not recover from East Bay the defense fees and costs paid by Storquest's liability insurer, Continental Casualty Company, a CNA insurance company (CNA).  East Bay and Storquest both appealed.  We affirm.

1

## II.  BACKGROUND

In 1995, Peralta Orthopedics Associates (Peralta) (the former name of East Bay) entered a written agreement to rent a storage space (space no. G-14) at a facility on Shattuck Avenue in Oakland, owned by U.C. Mini-Storage (Storquest's predecessor-in-interest).  The agreement states it is executed "by and between U.C. Mini-Storage ('Owner') and Peralta Ortho ('Occupant') . . . ."  Sally Bruno, an employee of Peralta/East Bay, signed the agreement on Peralta/East Bay's behalf.  The signature lines for the parties appear at the bottom of the front page of the agreement.  Just above Bruno's signature, the agreement states "the parties hereto have read and understood both front and back pages of this Lease and have executed this Lease as of the date first written above."

The back page of the agreement includes additional terms, including paragraph 13, the indemnity provision, which states:  "**13.  INDEMNITY:**  Occupant will indemnify, hold harmless and defend Owner from any claims or actions that are hereafter made or brought about by others as a result or arising out of Occupant's use of the premises, including claims for Owner's active negligence."  At the bottom of the back page, the agreement states "Occupant has read the terms listed above," and provides a box for the Occupant to initial.  The box is blank.

In 2005, Hart filed suit against Storquest, alleging premises liability.  In her complaint, Hart alleged that, in November 2003, while she was placing a box on a ramp at the facility, the ramp moved, causing Hart to fall to the ground and sustain injuries.  Hart alleged Storquest negligently failed to secure the ramp in place.

In 2008, Storquest filed a second amended cross-complaint (cross-complaint) against East Bay and other parties.  Storquest asserted causes of action for express indemnity, breach of contract and declaratory relief against East Bay, alleging the rental

2

agreement required East Bay to defend Storquest against Hart's claims and to indemnify Storquest for the amount of any judgment obtained by Hart.[1]

Storquest moved for summary adjudication, requesting a ruling that the rental agreement obligated East Bay to defend and indemnify Storquest against Hart's claims. Evidence submitted by the parties in connection with the motion showed that on the date of the incident, Hart, an East Bay employee, working with her coworker or supervisor Sue Hollinger, used a rolling cart to move about 400 boxes of documents from East Bay's storage space to a loading dock at the facility. Hart removed the boxes from the cart and placed them on the edge of the loading dock. Hollinger took the boxes from the edge of the loading dock and put them onto the lift of a mobile document shredding truck (the Shred-It truck) that was parked near the dock. Hollinger testified in her deposition that, at some point in this process, a Storquest employee came out from the office area, assembled a ramp and placed it on the loading dock. Hollinger did not believe the ramp was safe and told Hart they would not be using it. While moving boxes, Hart fell and sustained injuries.[2]

East Bay opposed summary adjudication, arguing (1) the parties did not mutually assent to the terms on the back page of the rental agreement, (2) the indemnity provision was unconscionable, and (3) the provision violated public policy.

The trial court granted summary adjudication, ruling (1) the rental agreement was a binding and valid contract, (2) the agreement required East Bay to defend Storquest against Hart's claims as of September 18, 2008 (the date Storquest tendered its defense to

---

[1] The cross-complaint also included causes of action for comparative indemnity and contribution. Storquest later agreed to dismiss those causes of action.

[2] The evidence submitted in connection with the summary adjudication motion does not establish how Hart fell or whether she used the ramp set up by Storquest. Hollinger did not see Hart fall. In her deposition, Hollinger testified Hart later stated "she thought maybe she put the box on the edge or touched the edge of the ramp or something, and it caused the ramp to go all the way down." But Hart also told Hollinger she did not know how she fell.

East Bay), and (3) the agreement required East Bay to indemnify Storquest against claims made by Hart in the underlying lawsuit.

At the conclusion of the trial on Hart's complaint, the jury found negligence on the part of Storquest (50 percent), East Bay (20 percent), Hart (20 percent) and Shred-It USA, Inc. (10 percent). The trial court entered judgment in favor of Hart and against Storquest in the amount of $615,835.21, plus interest.

The trial court subsequently held a bench trial on Storquest's cross-complaint against East Bay for indemnity and defense costs. Storquest argued it was entitled to (1) indemnification for Hart's judgment, including costs and postjudgment interest (totaling $764,485.03 as of the date of trial on the cross-complaint), and (2) $523,929.49 in attorney fees and costs incurred to defend Storquest against Hart's claims from September 18, 2008 (when Storquest tendered defense of the action to East Bay) to August 9, 2010 (when East Bay, following the court's summary adjudication ruling, assumed Storquest's defense).

The evidence showed Storquest's liability insurance carrier, CNA, retained Carlson, Calladine & Peterson, LLP to defend Storquest against Hart's claims. CNA, not Storquest, paid all the attorney fees and costs incurred for Storquest's defense against Hart's claims before East Bay assumed Storquest's defense.

On October 18, 2011, after the close of evidence at the bench trial, East Bay moved for partial judgment under Code of Civil Procedure section 631.8 as to Storquest's claim for defense fees and costs incurred in defending against Hart's claims. East Bay argued that, because CNA had paid all such fees and costs, Storquest had sustained no damages.

Storquest filed a brief in opposition to East Bay's motion, contending CNA could recover the fees and costs from East Bay under the doctrine of equitable subrogation, and could do so by suing in Storquest's name. Storquest also moved to amend its cross-complaint "to conform to proof at trial" to add CNA as a cross-complainant and "to allow for [CNA] to recover under the doctrine of equitable subrogation." CNA had not filed a

4

separate subrogation action against East Bay, and Storquest's cross-complaint did not assert a cause of action for equitable subrogation.

After hearing argument on both motions, the court entered judgment for Storquest and against East Bay in the amount of $764,485.03 for indemnity against the amount awarded to Hart, plus interest. The judgment provided that Storquest would take nothing from East Bay for the fees and costs paid by CNA in defending Storquest against Hart's claims. By so ruling, the court in effect granted East Bay's motion for partial judgment as to defense fees and costs, and denied Storquest's motion to amend the cross-complaint.

East Bay appealed the court's summary adjudication ruling (reflected in the judgment on the cross-complaint) that East Bay is obligated to indemnify Storquest for the liability arising from Hart's claims. Storquest cross-appealed, challenging the court's ruling it was not entitled to recover defense fees and costs.

## III.  DISCUSSION

### A.  East Bay's Appeal

East Bay contends the trial court erred in granting summary adjudication because (1) the parties did not mutually assent to the terms on the back page of the rental agreement, including the indemnity provision (paragraph 13), (2) the indemnity provision does not apply because it does not cover claims by East Bay employees such as Hart, and because Hart's claims do not "aris[e] out of [East Bay's] use of the premises," and (3) the indemnity provision is invalid or unenforceable because it is an unlawful exculpation clause under Civil Code[3] section 1668, and because it is unconscionable and violates public policy. We reject these arguments.

#### 1.  Standard of Review

"The rules of review are well established. If no triable issue as to any material fact exists, the defendant is entitled to a judgment as a matter of law. [Citations.] In ruling on the motion, the court must view the evidence in the light most favorable to the opposing party. [Citation.] We review the record and the determination of the trial court de novo."

---

[3] All statutory references are to the Civil Code unless otherwise stated.

5

(*Shin v. Ahn* (2007) 42 Cal.4th 482, 499; see *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972 [summary adjudication order is reviewed de novo].)

### 2.     Mutual Assent

Every contract requires mutual assent or consent.  (§§ 1550, 1565.)  Mutual assent is based on the "objective and outward manifestations of the parties; a party's 'subjective intent, or subjective consent, therefore is irrelevant.' " (*Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1587.)  In general, "one who signs an instrument which on its face is a contract is deemed to assent to all its terms.  A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." (*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049 (*Marin Storage*).)

Storquest's motion established there was mutual assent to the terms of the rental agreement.  The document signed by East Bay's agent Sally Bruno, entitled "Rental Agreement," is on its face a contract, as East Bay concedes.  East Bay therefore is deemed to assent to all its terms, including the indemnity provision on the back page.  Moreover, the agreement itself makes clear it includes the terms on the back page.  At the bottom of the front page and just above Bruno's signature, the agreement states the parties "have read and understood *both front and back pages of this Lease* and have executed this Lease as of the date first written above." (Italics added.)

As noted, at the bottom of the back page, the agreement states "Occupant [East Bay] has read the terms listed above," and provides a box for the Occupant to initial; the box is blank.  Bruno, who signed the agreement on behalf of East Bay in 1995, states in a declaration submitted in opposition to Storquest's motion (in 2010, fifteen years after she signed the agreement) that she does not recall reading or being aware of the second page of the agreement.

This evidence does not create a triable issue of material fact.  It is undisputed East Bay entered a contract when Bruno signed the rental agreement, so, under the general rule stated above, East Bay is deemed to have assented to all its terms, whether or not

6

Bruno read all of them. (*Hernandez v. Badger Construction Equipment Co.* (1994) 28 Cal.App.4th 1791, 1816.) Moreover, as noted, the front page of the agreement refers to the back page and confirms the parties have read and understood both pages. In these circumstances, the fact Bruno did not *also* initial the box on the back page does not provide a basis for concluding the parties did not mutually assent to the terms of the agreement. And, because the test for contractual consent is objective, any uncommunicated, subjective understanding on Bruno's part as to the scope of the agreement is not relevant. (*Hilleary v. Garvin* (1987) 193 Cal.App.3d 322, 327.)

East Bay's reliance on *Windsor Mills, Inc. v. Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987 (*Windsor Mills*) is misplaced. In that case, the appellate court held the parties had not agreed to arbitrate where the arbitration provision at issue was on the reverse side of a document that was entitled " 'Acknowledgment of Order,' " was not signed by the plaintiff, and was not clearly a contract. (*Id.* at pp. 989–991.) The appellate court held that, when an offeree does not know an offer has been made to him, the offeree, "regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, *contained in a document whose contractual nature is not obvious*." (*Id.* at p. 993, italics added; see *Marin Storage, supra,* 89 Cal.App.4th at pp. 1049–1050 [contracting party generally is deemed to have assented to all contract terms; exception exists "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient"].) Here, the rental agreement is on its face a contract. The exception illustrated by *Windsor Mills* does not apply.[4] (See *Marin Storage, supra,* 89 Cal.App.4th at pp. 1049–1050.)

### 3. The Indemnity Provision Applies to Hart's Claims

#### a. Rules of Interpretation

In general, an agreement that one party to a contract will indemnify the other under specified circumstances "is construed under the same rules as govern the

---

[4] In its reply brief, East Bay suggests the parties did not mutually assent because their agreement was not "fully executed," i.e., signed by both parties. This is incorrect. Both parties signed the rental agreement.

interpretation of other contracts. Effect is to be given to the parties' mutual intent (§ 1636), as ascertained from the contract's language if it is clear and explicit (§ 1638). Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense. (§ 1644; [citations].)" (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 552.) Some specific rules of construction apply to noninsurance indemnity agreements. "For example, it has been said that if one seeks, in a noninsurance agreement, to be indemnified for his or her own active negligence, or regardless of the indemnitor's fault—protections beyond those afforded by the doctrines of implied or equitable indemnity—language on the point must be particularly clear and explicit, and will be construed strictly against the indemnitee."[5] (*Ibid.*) "Interpretation of a contract is solely a question of law unless the interpretation turns upon the credibility of extrinsic evidence." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 799.)

### b. Paragraph 13 Applies to Claims by East Bay Employees

Paragraph 13 requires "Occupant" to indemnify "Owner" for claims "made or brought about by others." East Bay contends paragraph 3 of the agreement defines "Occupant" to mean East Bay *and its employees*, so claims by East Bay employees are not claims by "others" within the meaning of paragraph 13.

East Bay is incorrect. The agreement does not define Occupant to mean East Bay and its employees. The opening paragraph of the agreement states it is executed "by and between U.C. Mini-Storage ('Owner') and Peralta Ortho ('Occupant') . . . ." The contracting parties ("Owner" and "Occupant," respectively) thus are U.C. Mini-Storage (Storquest's predecessor-in-interest) and Peralta (the former name of East Bay).

Paragraph 3 of the agreement, on which East Bay relies, does not define Occupant. Paragraph 3 (entitled "Release of Owner's Liability") states Owner and its agents are not liable to Occupant or its agents in certain circumstances. The sentence at issue states: "As a further consideration for the use and occupancy of the space and premises,

---

[5] Here, as noted, the indemnity provision expressly encompasses claims for Storquest's active negligence.

8

Occupant agrees that Owner, his agents, employees, and assigns shall not be liable to *Occupant, his/her agents, guests, licensees, or invitees* for any loss or damage, injury or death caused to them or to their property, as a result of the use and occupancy of the space or premises." (Italics added.) Paragraph 3 thus provides Owner is not liable to Occupant *or* to the other listed categories of persons. Paragraph 3 does not state that the term Occupant means or includes East Bay *and* the persons in the other listed categories.

Because the Occupant is East Bay, the provision in paragraph 13 specifying Occupant must indemnify Owner for certain claims by "others" requires East Bay to indemnify Storquest for a covered claim brought by an employee of East Bay on her own behalf. (See *Gonzales v. R.J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 808–809 [indemnity provision covering " 'all claims for damages to persons . . . growing out of the execution of the work' " required subcontractor-employer to indemnify general contractor for claim by subcontractor's employee].)

East Bay argues that, because paragraph 3 states Storquest is not liable to certain categories of persons (including East Bay's employees), the reference in paragraph 13 to claims by "others" must encompass only claims by persons not in the paragraph 3 categories, because only such persons can bring claims for which indemnification may be needed. Not so. Persons whose claims are purportedly barred by paragraph 3 may nonetheless bring claims (as Hart did here), and such claims may trigger the indemnification and defense obligations specified in paragraph 13.

Finally, East Bay notes in its reply brief that the agreement sometimes refers to conduct by Occupant or Owner (e.g., "Occupant's use of the premises" or "Owner's active negligence"). East Bay argues such provisions must encompass conduct of the parties' employees, since business entities can only act through their agents. But that does not mean a claim brought by an employee of the Occupant on her own behalf is a claim by the Occupant. Such claims are claims by "others" within the meaning of paragraph 13.

9

### c. Hart's Claims Arose Out of East Bay's Use of the Premises

Paragraph 13 requires East Bay to indemnify Storquest for claims brought "as a result or arising out of Occupant's use of the premises[.]"  East Bay argues (1) "premises" as used in the rental agreement means the storage space rented by East Bay (space no. G-14), rather than the storage facility as a whole, and (2) Hart's claims based on injuries she sustained while moving boxes in the loading dock area of the facility do not arise out of East Bay's use of the premises.

As the trial court noted at oral argument on the summary adjudication motion, some provisions of the rental agreement appear to use the term "premises" to refer to space no. G-14, while other provisions appear to use that term to refer to a larger area. The agreement first identifies the rented space as space no. G-14, and then states (in an introductory sentence just above the agreement's numbered paragraphs):  "Occupant hereby rents from Owner those certain premises described above and hereinafter referred to as 'premises' or 'space' on the following terms and conditions[.]"  This language suggests the terms "premises" and "space" are interchangeable and both refer to space no. G-14.  Similarly, paragraph 9, entitled "Premises," does not define "premises," but states Occupant accepts "the space" as being in good repair and will notify Owner of any defects in "the storage space."  Other provisions, however, use "premises" in a manner suggesting the term refers to the facility as a whole:  Paragraph 7 refers to Owner's right to take measures "to maintain order and security on the premises," and paragraph 8 states the owner can make rules deemed necessary "for the safety, care and cleanliness of the premises[.]"

We need not determine whether the term "premises," as used in paragraph 13 (the indemnity provision), refers to space no. G-14 or to the facility as a whole.  Even if "premises" refers to space no. G-14, Hart's claims to recover for injuries she sustained while moving boxes from space no. G-14 to the loading dock (and perhaps onto the ramp provided by Storquest at the dock) are claims "arising out of [East Bay's] use of" space no. G-14.  Moving items into or out of a rented storage space is a use of that space.  Indeed, the ability to use a space by moving items into or out of it is a central reason a

10

business or individual would rent a space. During a colloquy with East Bay's counsel at oral argument on the summary adjudication motion, the trial court stated: "But even if you got around that [the question as to the meaning of "premises"], I still think you're stuck on this indemnity language *arising out of the use of the premises* because it's *in a storage space by its very nature you bring stuff in to store and you take stuff out when you're no longer storing.* So any activity or connection thereto has got to be arising out of." (Italics added.) We agree, and we decline to interpret the phrase "arising out of Occupant's use of the premises" to include only activities occurring within, or immediately outside, space no. G-14.[6]

In support of its argument that Hart's claims do not arise out of East Bay's use of the premises, East Bay relies principally on *Hollander v. Wilson Estate Co.* (1932) 214 Cal. 582 (*Hollander*), and *City of Oakland v. Oakland Etc. Sch. Dist.* (1956) 141 Cal.App.2d 733 (*City of Oakland*). We agree with the trial court that those cases are distinguishable. In *Hollander*, the plaintiff, a tenant occupying most of one floor of a seven-story building, was injured while riding in an elevator that he and all other tenants used "as a means of ingress to and egress from" the building. (*Hollander*, *supra*, 214 Cal. at pp. 583–584.) The plaintiff sued the defendant building owner, who defended on the ground that a lease provision specified it would not be liable for injuries "arising . . . in or about or connected with this tenancy or the occupancy of said demised premises." (*Id.* at p. 584.) The California Supreme Court held the provision limiting liability did not apply. (*Id.* at p. 585.) The court held that, although the elevator was "a means of ingress to and egress from the premises," it was "in no sense demised or put under the control or operation of" the plaintiff. (*Id.* at p. 585.) Instead, the elevator was "owned, controlled, operated and maintained exclusively by the defendant." (*Ibid.*) The

---

[6] We do not hold that any claim arising from any activity by East Bay anywhere on Storquest's property is a claim "arising out of [East Bay's] use of the premises." We hold only that, based on the summary adjudication record, Hart's claims against Storquest arise out of East Bay's use of the premises, and thus trigger East Bay's indemnity obligation under paragraph 13 of the agreement.

11

court stated: "It is contrary to sound construction to say that [the lease] had in contemplation the release from liability for damages for personal injuries arising from the negligent operation or maintenance of this public elevator." (*Ibid.*) Similarly, in *City of Oakland*, the court held a provision in an auditorium lease requiring the lessee to indemnify the lessor for injuries "arising out of the use and occupation of *the* [leased] *premises* by the lessee" did not apply to an injury occurring on a public walkway providing access to the entrance of the auditorium, where the lease expressly stated the "premises" meant the arena of the auditorium building and no other areas. (*City of Oakland, supra,* 141 Cal.App.2d at pp. 734–735, 737–738.)

Here, in contrast to the above cases, Hart was not just passing through a common area while entering or leaving the storage facility. Instead, Hart sustained injuries while she and fellow East Bay employee Hollinger were engaged in the process of removing about 400 boxes from East Bay's storage space and moving them to the loading dock, over a period of several hours. We have concluded above that this removal of boxes constituted a use of the storage space. Accordingly, we hold that, whether or not Hart (as part of the removal process) placed a box on Storquest's ramp (a fact alleged in Hart's complaint, but not shown by the evidence presented in connection with summary adjudication), Hart's claims to recover for her injuries arise out East Bay's use of the premises within the meaning of paragraph 13.

The other cases cited by East Bay are also inapposite. In *Minges Creek, L.L.C. v. Royal Ins. Co.* (6th Cir. 2006) 442 F.3d 953, 954, 958, the court held the common areas of a shopping mall (such as the parking lot where the injury at issue occurred) were not part of the "leased premises," a term defined in the applicable lease to mean the interior of one store in the mall. In *Axe v. Fidelity & Casualty Co.* (1913) 239 Pa. 569, 575–577, the court held that, because the applicable insurance policy defined "premises" to mean the floor of a building occupied by the plaintiff (rather than the entire building), the plaintiff had not complied with a policy provision requiring a watchman on the premises, where the watchman was responsible for the whole building and did not have access to plaintiff's floor. These cases, which relied on the language of the particular contractual

12

provisions at issue, do not stand for the proposition that "premises" has one meaning in all agreements or in all contexts. In any event, as noted, even if "premises" in paragraph 13 of the rental agreement means space no. G-14, Hart's claims arise out of East Bay's use of the premises.

### 4. The Indemnity Provision is Enforceable

#### a. Section 1668

East Bay argues paragraph 13, the indemnity provision, is invalid under section 1668, which provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Under section 1668, a contractual provision exculpating a party from liability is invalid if it "affects the public interest." (*Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 96, 98 (*Tunkl*).)

Section 1668 provides no basis for invalidating paragraph 13, because that statute does not apply to indemnity agreements. (*Health Net of California, Inc. v. Department of Health Services* (2003) 113 Cal.App.4th 224, 233; *Lemat Corp. v. American Basketball Assn.* (1975) 51 Cal.App.3d 267, 278 (*Lemat*).) In *Lemat*, this court explained: "An exemption may deprive a victim of compensation for injuries but an agreement to indemnify a person who may be responsible for a loss is additional assurance that the loss will be compensated. . . . Section 1668 is not applicable to indemnity agreements." (*Lemat, supra,* 51 Cal.App.3d at p. 278.)

13

Because paragraph 13 is an indemnity provision, rather than an exculpatory provision subject to section 1668, we need not decide whether paragraph 13 "affects the public interest."[7]  (See *Tunkl, supra,* 60 Cal.2d at pp. 96, 98.)

### b. Unconscionability and Public Policy

East Bay contends paragraph 13 is unconscionable or violates public policy, because it appears in a form "adhesion contract" and unreasonably reallocates the risk of liability from Storquest to East Bay.  " ' "[U]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." [Citation.]  Phrased another way, unconscionability has both a "procedural" and a "substantive" element.'  [Citation.]  ' "The procedural element requires oppression or surprise.  [Citation.]  Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form.  [Citation.]  The substantive element concerns whether a contractual provision reallocates risks in an objectively unreasonable or unexpected manner." [Citation.]  Under this approach, both the procedural and substantive elements must be met before a contract or term will be deemed unconscionable.  Both, however, need not be present to the same degree.  A sliding scale is applied so that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." ' " (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 821.)

---

[7] In its reply brief, East Bay argues (1) a different provision of the agreement, paragraph 3 (which states Storquest is not liable to East Bay or its employees in certain circumstances), is invalid under section 1668, and (2) even if paragraph 3 is not invalid under section 1668, it is unenforceable against Hart, who did not sign the agreement.  We decline to address these new arguments presented for the first time in East Bay's reply brief.  (See *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)  In any event, East Bay's indemnity obligation is imposed by paragraph 13, not paragraph 3.

14

Assuming the rental agreement was a contract of adhesion (i.e., "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms") and thus the element of procedural unconscionability was present to some degree (see *Marin Storage, supra,* 89 Cal.App.4th at pp. 1052, 1054), we conclude as a matter of law that paragraph 13, the indemnity provision (which allocates liability between two business entities, Storquest and East Bay), was not substantively unconscionable. Contrary to East Bay's characterization, paragraph 13 does not broadly reallocate to East Bay all "liability for latent defects" on Storquest's property, or all liability for Storquest's negligence, regardless of the circumstances. Instead, paragraph 13 shifts liability from Storquest to East Bay for a specific category of claims, i.e., claims "made or brought about by others as a result or arising out of [East Bay's] use of the premises, including claims for [Storquest's] active negligence." The provision thus requires indemnification only for claims that arise out of certain conduct by East Bay (its use of the premises), including the subset of such claims that assert Storquest was actively negligent. Paragraph 13 does not require East Bay to indemnify Storquest for any claims that do not arise out of East Bay's use of the premises.

Accordingly, the claims that will trigger paragraph 13 will involve situations over which East Bay, because it is using the premises, can exercise at least some degree of control (although some covered situations will also involve alleged negligent conduct by Storquest). In the present case, for example, the evidence on summary adjudication showed East Bay employees Hart and Hollinger worked together to move the boxes, and Hollinger testified she directed Hart as to how to do so, including instructing her not to use the ramp. We conclude such an allocation of liability between business entities is reasonable and, contrary to East Bay's suggestion, does not expose East Bay to unlimited liability for claims arising out of circumstances over which it had no control. (See *Marin Storage, supra,* 89 Cal.App.4th at pp. 1055–1056 [provision requiring crane lessee/customer to indemnify lessor whenever crane was used on customer's premises, where customer would have control over the crane, or when the injury was caused by the customer, was not substantively unconscionable].) The allocation of risk in the

15

indemnity provision is neither substantively unconscionable nor in violation of public policy.

For the foregoing reasons, the trial court correctly granted summary adjudication for Storquest as to the applicability and enforceability of the indemnity provision in the rental agreement.

## B.    Storquest's Cross-Appeal

Storquest challenges the portion of the judgment denying it recovery of the defense fees and costs paid by CNA to defend Storquest against Hart's claims.  Storquest contends the trial court (1) committed "legal error" by "conclud[ing] CNA could not recover the incurred attorneys' fees and costs in the name of its insured" under principles of equitable subrogation, and (2) abused its discretion by denying Storquest's motion to amend the cross-complaint to add CNA as a party and permit CNA to recover under the doctrine of equitable subrogation.[8]

As to the first of these arguments, although the trial court noted in its judgment that CNA was not a party to the cross-complaint, the court did not hold that CNA could not sue in Storquest's name under any circumstances, and such a conclusion is not a necessary predicate to the court's ultimate determination that Storquest could not recover the fees and costs in the circumstances of this case.  Instead, the court could have concluded that, whether or not an amendment to add CNA as a party was essential, Storquest (which, prior to and during trial, sought recovery solely on theories of breach of contract and express indemnity) could not change its theory of recovery and seek to collect the fees and costs on CNA's behalf under equitable subrogation principles.  Because we determine below that such a conclusion (i.e., that Storquest could not assert its new subrogation theory after the close of evidence at trial) supports the judgment in

---

[8] Storquest thus argues only that CNA could recover the fees and costs, either by suing in Storquest's name or by becoming a party through an amendment to the cross-complaint.  Storquest does not claim it was entitled to recover the fees and costs *for itself*, so we need not address any such argument.  (See *Bramalea California, Inc. v. Reliable Interiors, Inc.* (2004) 119 Cal.App.4th 468, 472 [where insurer paid fees, any recovery by insured from third parties on contract claims would be prohibited double recovery].)

16

favor of East Bay as to defense fees and costs, we affirm the judgment on that ground.[9] (See *Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1 [appellate court may affirm judgment on any basis presented by the record, whether or not relied on by the trial court].)  We review the trial court's implicit ruling on this point for abuse of discretion.  (See *Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 909 [ruling on motion to amend complaint during trial reviewed for abuse of discretion].)

"Subrogation is the 'substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim.'  [Citation.] 'In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid.' " (*Interstate Fire & Casualty Ins. Co. v. Cleveland Wrecking Co.* (2010) 182 Cal.App.4th 23, 31–32 (*Interstate*).)  " 'The essential elements of an insurer's cause of action for equitable subrogation are as follows:  [1] the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; [2] the claimed loss was one for which the insurer was *not* primarily liable; [3] the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; [4] the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; [5] the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; [6] the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; [7] justice requires that the loss be entirely shifted from the insurer to the defendant, whose

---

[9] We therefore need not address Storquest's arguments as to (1) whether CNA had to sue in its own name and assert a cause of action for equitable subrogation, or (2) whether CNA could have established the elements necessary to recover on an equitable subrogation theory if it had presented such a theory earlier.

17

equitable position is inferior to that of the insurer; and [8] the insurer's damages are in a liquidated sum, generally the amount paid to the insured.' " (*Id.* at pp. 33–34.)

Storquest argues that, under equitable subrogation principles, CNA's payment of the fees and costs incurred in defending against Hart's claims effected an "assignment by operation of law" of Storquest's claims against East Bay, which entitled CNA to recover the fees and costs from East Bay. But, as noted, an insurer's payment of an insured's loss is *not* the only prerequisite to the insurer's right to recover under the doctrine of equitable subrogation. Even when an insurer obtains an *express* assignment of its insured's claims against a third party, it still must establish its equitable entitlement to subrogation, including showing its equitable position is superior to that of the third party. (*Meyers v. Bank of America Etc. Assn.* (1938) 11 Cal.2d 92, 96–97, 102; *Dobbas v. Vitas* (2011) 191 Cal.App.4th 1442, 1446, 1455.)

Here, prior to East Bay's filing of its motion for judgment, Storquest did not seek to show CNA was entitled to equitable subrogation under the circumstances of this case, including showing CNA's equitable position was superior to that of East Bay. As noted, CNA was not named as a party to Storquest's cross-complaint, and Storquest did not seek (until after East Bay's filing of its motion for judgment) to amend the cross-complaint to add CNA as a party, despite twice amending the cross-complaint to make other changes. CNA never sought to intervene in the action. (See *Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 550 [insurer has duty to protect its subrogation rights, such as by seeking to intervene in the insured's lawsuit against the legally responsible third party or by filing a separate lawsuit against the third party].) The cross-complaint does not assert a cause of action for equitable subrogation.

Even if it was not essential for CNA to become a party and to include a cause of action for equitable subrogation in the cross-complaint, CNA and Storquest did not seek (prior to East Bay's motion for judgment) to present the equitable subrogation issue by any other method either. In its trial brief prior to the bench trial on the cross-complaint, Storquest stated that, in light of the court's prior ruling as to East Bay's duty to defend and indemnify Storquest against Hart's claims, the "remaining issue to be tried and

18

decided by this court is *the amount* of damages to award Storquest against East Bay." (Italics added.) Storquest stated the court only needed to determine (1) "the reasonable amount of attorney fees and costs incurred by Storquest . . ." and (2) "the amount of the judgment against which East Bay must indemnify Storquest." Storquest did not state it was seeking to recover the fees and costs for CNA under the doctrine of equitable subrogation, and did not ask the court to determine the applicability of that doctrine, including whether CNA's equitable position was superior to that of East Bay.

At trial, Storquest focused on establishing, through the testimony of its counsel and CNA's claims adjustor, the amount of fees and costs required to defend Storquest before East Bay assumed its defense. The only testimony Storquest presented on the subrogation point (during its redirect examination of CNA's claims adjustor, after East Bay had established on cross-examination that CNA, not Storquest, paid the fees and costs incurred in defending against Hart's claims) was the adjustor's testimony that CNA "retains a subrogated interest" in its insurance policies, and that she believed the policy issued to Storquest contained such an interest. It was not until after the close of evidence, in its opposition to East Bay's motion for judgment, that Storquest argued expressly that it was entitled to recover the fees and costs on CNA's behalf under the doctrine of equitable subrogation.

Under these circumstances, Storquest has not met its burden to show the trial court abused its discretion in declining to permit Storquest to assert a subrogation theory. (See *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1097 (*Emerald Bay*) [appellant has burden to show abuse of discretion].) First, Storquest's late presentation of its proposed new theory is a sufficient basis to uphold the trial court's decision. " ' "The law is well settled that a long deferred presentation of the proposed amendment without a showing of excuse for the delay is itself a significant factor to uphold the trial court's denial of the amendment. [Citation.]" [Citation.] "The law is also clear that even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial." ' " (*Emerald Bay, supra,* 130 Cal.App.4th at p. 1097.) Storquest contends CNA chose not to appear as a

19

cross-complainant because it wished to avoid prejudice to Storquest in the jury trial on Hart's claims. But that concern does not explain why, in connection with the litigation of Storquest's cross-complaint against East Bay and the ultimate bench trial on Storquest's claims, Storquest did not alert the trial court or East Bay in any way prior to the close of evidence that it sought to recover on CNA's behalf on an equitable subrogation theory.

Second, " ' "amendments of pleadings to conform to the proofs should not be allowed when they raise new issues not included in the original pleadings and upon which the adverse party had no opportunity to defend." ' " (*Garcia v. Roberts, supra,* 173 Cal.App.4th at p. 909.) Storquest notes it sought to obtain the same *relief* on its equitable subrogation theory as it previously sought on its contract claims, i.e., recovery of attorney fees and costs. But, as noted above, an insurer seeking to recover from a third party on an equitable subrogation theory must establish elements not included in a claim for breach of contract or express indemnity, such as showing the insurer's equitable position is superior to that of the third party. Because Storquest did not present an equitable subrogation theory prior to or at trial, East Bay did not have the opportunity to develop or present factual or legal defenses to the elements of that claim. In these circumstances, it was not an abuse of discretion to conclude that permitting Storquest to pursue its new equitable subrogation theory after the close of evidence would be prejudicial to East Bay. (See *Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1380–1382 [amendment during trial to rely on different contractual theory prejudiced defendant, who was unable to conduct discovery or research to mount defenses to new theory]; *Garcia v. Roberts, supra,* 173 Cal.App.4th at pp. 912–913; *North 7th Street Associates v. Constante* (2001) 92 Cal.App.4th Supp. 7, 10–11 [amendment just before trial should not have been permitted where amended cause of action included different elements and was subject to different defenses].)

Storquest contends permitting it to assert an equitable subrogation theory would not have prejudiced East Bay, because, based on the evidence in the record, CNA's equitable position is superior to that of East Bay. Storquest relies in part on *Interstate*, in which Division Five of this court held, at the demurrer stage, that a liability insurer had

20

alleged the superior equities element of an equitable subrogation cause of action against a construction subcontractor, where the insurer alleged that the subcontractor was contractually obligated to indemnify the general contractor, and that the subcontractor's negligence caused the underlying loss. (See *Interstate, supra,* 182 Cal.App.4th at pp. 28, 30–31, 37, 39–41.) Storquest contends the same factors are present here, as East Bay had a contractual duty to indemnify Storquest; Storquest alleged in its cross-complaint that East Bay was negligent; and the jury found East Bay's negligence contributed to Hart's injuries (with East Bay assigned 20 percent of comparative fault).

But these facts and allegations do not establish East Bay could not have developed counterarguments or defenses, or presented evidence on the new issues Storquest sought to introduce. For example, East Bay could have sought to develop its argument that alleged or proven negligence by an insurer's insured may be relevant in balancing the equities of the insurer and a third party for purposes of equitable subrogation. (See *Truck Ins. Exchange v. County of Los Angeles* (2002) 95 Cal.App.4th 13, 16, 17–18, 27 [equities favored insurer over third party, where jury found that third party's negligence caused loss, and that insurer's insured "was not negligent and bore no responsibility" for the loss].) Here, the jury found Storquest, CNA's insured, was negligent and bore 50 percent responsibility for Hart's injuries. Moreover, even when an insurer can establish the elements of equitable subrogation, including superior equities, the insurer's right to recover is subject to applicable defenses the third party may have. (See *id.* at p. 27.)

For the foregoing reasons, the trial court did not abuse its discretion in declining to allow Storquest to present its new equitable subrogation theory after the close of evidence at trial. We therefore affirm the portion of the judgment denying Storquest recovery of the defense fees and costs paid by CNA in defending Storquest against Hart's claims.

## IV. DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

21

_____
McGuiness, P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.