## KOUTSIS v. ZION'S SAV. BANK & TRUST CO.

No. 4044.    Decided March 28, 1924.    (225 Pac. 339.)

1. BANKS AND BANKING—DEPOSITOR HELD BOUND BY SAVINGS BANK'S BY-LAWS, THOUGH UNABLE TO READ. Where depositor in savings bank signed the signature card expressly agreeing to the by-laws, *held* under the evidence that he could not avoid being bound by such by-laws, under Comp. Laws 1917, § 992, by merely saying that he could not read and did not know their effect.

2. BANKS AND BANKING—SAVINGS BANK'S BY-LAWS HELD NOT TO RELIEVE FROM REASONABLE CARE IN AVOIDING PAYMENT TO WRONG PERSON. The by-laws of a savings bank prescribing time and conditions of repayment of deposits do not relieve it from liability for payment of depositor's account to wrong person, unless it exercises ordinary care in so doing.

3. BANKS AND BANKING—WHETHER SAVINGS BANK EXERCISED ORDINARY CARE IN AVOIDING PAYMENT TO WRONG PERSON HELD FOR JURY. Where savings bank paid out depositor's account to another person who presented his passbook which he had lost, whether bank exercised ordinary care in making the payment was for jury.

4. APPEAL AND ERROR—REFUSAL OF ORAL REQUEST FOR INSTRUCTION NOT CONSIDERED BY APPELLATE COURT. Appellate Court could not consider an assignment of error in refusal of an instruction orally requested, in view of Comp. Laws 1917, § 6803, requiring requests for special instructions to be in writing.

5. APPEAL AND ERROR—TRIAL—INSTRUCTION IN ACTION TO RECOVER DEPOSIT FROM SAVINGS BANK HELD PREJUDICIALLY ERRONEOUS. In action against savings bank, to recover deposit which had been paid to wrong person, in which only liability of bank was for failure to exercise ordinary care, an instruction laying down abstract proposition that, in absence of modifying agreement, bank was absolutely bound to pay to owner of deposit,

*held* error and prejudicial; evidence on issue submitted as to whether bank exercised ordinary care not being conclusive.[1]

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight,* Judge.

Action by Dan Koutsis against the Zion's Savings Bank & Trust Company.   Judgment for plaintiff, and defendant appeals.

REVERSED, and new trial ordered.

*D. H. Thomas,* of Salt Lake City, for appellant.

*John F. Tobin,* of Salt Lake City, for respondent.

CHERRY, J.

This is an action to recover $350 deposited by plaintiff in the savings bank of defendant.   A trial by jury resulted in a verdict and judgment for the plaintiff from which defendant has appealed.

The plaintiff is a Greek, and testified that he could not read or write anything except his own name.   On September 16, 1920, he opened a savings account at defendant's bank, at which time he signed and left with the bank a signature card, giving his street address, date of birth, and father's name, and containing an agreement that his account should be subject to the existing by-laws of the bank, as printed in the passbook issued by it.   He was given a passbook in which the amount of his deposit was entered and in which were printed the by-laws of the bank.   The particular by-laws relating to the matters in controversy are as follows:

Sec. 14.   The depositors shall by accepting a passbook signify their assent to the regulations and by-laws of this company.

Sec. 15.   All deposits and all payments shall be entered in the books of the company, and a duplicate of such entries in a book

[1] *Riding* v. *Roylance,* 63 Utah 221, 224 Pac. 885.

given to the depositor, which shall be his voucher and evidence of his property in the bank.

Sec. 17. Drafts may be made personally or by order, in writing, of the depositor; but no person shall have the right to demand any part of his savings deposits or interest without producing his passbook that such payment may be entered thereon.

Sec. 18. The officers of the company shall endeavor to prevent frauds upon the depositor; but all payments to persons producing the passbooks issued by the company shall be valid payments to discharge the company.

Sec. 21. Passbooks shall be returned to the bank when the account is closed; if lost, immediate notice must be given at the bank to guard against fraud.

The plaintiff was at the bank and made another deposit on February 26, 1921, and on July 14, 1921, the total amount to his credit was $372.15.

On July 14, 1921, an unknown person described as a foreigner, appeared at the bank with the plaintiff's passbook, and presenting a regular form of printed receipt used for that purpose to which was signed plaintiff's name, requested the payment or withdrawal of $350. The paying teller did not know the plaintiff or the person presenting the passbook, and the receipt was not signed in his presence. He took the receipt and compared the signature on it with the plaintiff's signature on the signature card, and, being satisfied paid the amount requested.

On or about July 17, 1921, the plaintiff discovered that his passbook had been stolen and on the next day he notified the bank of the loss, and was informed that $350 had been previously withdrawn, as before stated. Plaintiff demanded payment of his deposit, $350 of which was refused, and this action followed.

The action was based on the theory of the defendant's negligence. The complaint alleges the deposit, the loss of plaintiff's passbook, the notice thereof to defendant, the information from defendant that $350 had been paid to some unauthorized person, the demand of plaintiff for payment, and concludes by alleging that defendant was negligent in not making proper careful, or any investigation concerning the identity of the person to whom the payment was made, and

in not making careful, proper, or any comparison of plain-
tiff's handwriting and the handwriting of the receipt upon
which the payment was made.

The answer, in substance, admitted the deposit, notice of
the loss of book, and demand of plaintiff, and alleged that it
was engaged exclusively in operating a savings bank, with
over 30,000 active accounts; alleged the necessity for and the
adoption of its by-laws and the plaintiff's agreement thereto;
alleged the signing by plaintiff of the signature card, and the
delivery to him of the pass-book; and alleged that the pay-
ment of the $350 in question was made by it in good faith
in the regular course of business, with all due diligence and
according to its by-laws, to a person who presented the plain-
tiff's passbook and a regular receipt to which plaintiff's name
was signed, and without any negligence or carelessness on its
part, and that by virtue of the payment it was discharged
from liability.

The evidence was without substantial conflict, and disclosed
the facts hereinbefore stated.  Other particulars of the evi-
dence will be referred to hereafter.

At the conclusion of the evidence the defendant requested
the court to peremptorily instruct the jury to find a verdict
in its favor, the refusal of which is assigned as error.

It is contended in behalf of the bank that the case should
not have been submitted to the jury (1) because according
to the by-laws, the payment made to the holder of the pass-
book was a valid payment and discharged the bank; (2) that
there was no negligence on the part of the bank.

We think, under the evidence in the case, that the plaintiff
was bound by the by-laws of the bank.  Comp. Laws Utah
1917, § 992, authorizes savings banks, under certain limita-
tions, to prescribe by their by-laws the time and conditions
on which repayment is made to depositors.  The plaintiff
signed the signature card expressly agreeing to the by-laws,
and in addition accepted the passbook, which contained a
copy of the by-laws, and kept it for nearly a year.  He
had previous banking experience, and at the time in
question had accounts with two other banks.  In strict

accordance with the by-laws, he promptly notified the bank when his passbook was lost. Under these circumstances, and in the absence of fraud, he could not avoid being bound by the by-laws, by merely saying that he could not read and did not know their effect.

But the by-laws do not relieve the bank from liability for payment to the wrong person unless it exercises ordinary care in so doing. The rule, supported by numerous cases is very concisely stated in 7 C. J. 869-871, as follows:

"It is a very general rule of savings banks, to which depositors are required to assent, that a payment made to a person producing the passbook shall discharge the bank; and it is very generally recognized that such a rule is reasonable, and the bank is accordingly held discharged by such a payment, where it has exercised proper care, even though the payment was made to a person other than the owner of the deposit.

"Such rule cannot, however, relieve a bank from its obligations to exercise care and diligence to prevent payment to the wrong person; and, where the bank had been negligent in this respect, a payment does not release it from liability to the true owner of the deposit, even though the person receiving payment presented the passbook; and the same is true even though the depositor has neglected to give notice of the loss of his passbook, as required by the rule of the bank.

"A savings bank, unlike a discount bank, is bound to exercise only ordinary care in paying out its depositor's funds, and, if such care was exercised, a depositor cannot recover because his funds were paid out to a stranger."

The question then arises, Was there sufficient evidence of defendant's want of ordinary care to be submitted to the jury? The paying teller did not know the plaintiff nor the person to whom the payment was made. The plaintiff is a Greek, and the man to whom the money was paid was described as a "foreigner." The receipt presented was not signed in the presence of the teller, and the amount of money to be withdrawn was not written in the receipt when presented, but was inserted by the teller. The signature on the receipt and on the signature card were introduced in evidence. While the paying teller testified that the similarity of the signatures was sufficient to convince him at the time

that they were made by the same person, he admitted that there were differences, to which his attention was called at the trial which he did not observe at the time of payment. On the signature card was indorsed the street address of the plaintiff, the year of his birth and his father's name. The paying teller made no inquiry of the person requesting payment as to these means of identification. In view of these circumstances, we are of the opinion that there was sufficient evidence to be submitted to the jury on the question of whether the bank exercised ordinary care and diligence in making the payment in question. The defendant's request for a directed verdict in its favor was properly denied.

The next assignment of error urged by appellant is that—

"The court erred in refusing to instruct the jury that the by-laws were in force, and that the plaintiff had signed the signature card which incorporated the by-laws and thereby a contract was made which was binding upon both parties."

After the court had instructed the jury, the appellant's attorney orally requested the court to give the instruction referred to. The court declined to give it, to which an exception was taken. The state of the record is such that the assignment cannot be considered. The statute (Comp. Laws Utah, 1917, § 6803) expressly requires requests for special instructions to be in writing.

After properly submitting to the jury the question of whether the bank exercised ordinary care, under the circumstances, in making the payment in controversy, the court gave to the jury the following instruction:

"You are instructed that, as in the case of other banks, a savings bank, in the absence of any modifying agreement, is authorized to pay deposits only to the depositor or his attorney, or, in the case of his death, to his legal representatives, and the bank cannot avoid liability for a payment made upon a forged order to one who fraudulently obtained possession of the deposit book, even by showing that such payment was made in good faith and in the exercise of ordinary care and in accordance with the general practice among savings banks."

A proper exception was taken to this instruction, and the giving of it is assigned as error. It is unnecessary to con-

sider the correctness of the instruction as an abstract proposition of law; it is enough to say that it was not applicable to the facts in this case. As before seen, the question of whether or not there was a modifying agreement was not an open one. The plaintiff, under the admitted facts in the case, was bound by the bank's by-laws, and the by-laws modified and limited the liability of the bank. It could not be held liable except for failure to exercise ordinary care in paying out the money on deposit. This was the only ground of liability to be submitted to the jury. The instruction complained of assumed that the jury might conclude that there was no modifying agreement and find for the plaintiff, even though the bank had exercised ordinary care. Two separate and independent grounds of recovery were thus submitted to the jury. If the evidence of the bank's failure to exercise ordinary care was conclusive, it might well be that the giving of the erroneous instruction should be disregarded, as harmless. But the evidence on that subject was not conclusive. While sufficient to be submitted to the jury, as we have said, the decisions of the jury might reasonably have been one way as well as the other. The instruction referred to was misleading and erroneous, because the case presented no situation to which the instruction could properly be applied. *Riding* v. *Roylance,* 63 Utah, 221, 224 Pac. 885.

A judgment cannot stand unless it affirmatively appears to be supported by legal grounds. If this verdict was based upon a finding that the bank failed to exercise ordinary care in paying out the money it ought to be sustained; but if it rests upon the conclusion that there was no modifying agreement and the bank was liable, even though it observed ordinary care, it is palpably wrong and cannot stand.

In view of the instructions, it is impossible to say upon which grounds the verdict was based. For these reasons the judgment is reversed, and a new trial ordered. Costs to appellant.

GIDEON, THURMAN, and FRICK, JJ., and McCREA, District Judge, concur.

WEBER, C. J., did not participate herein.