[Civ. No. 15661. First Dist., Div. Two. Jan. 28, 1954.]

FRANK V. LARRUS et al., Appellants, v. THE FIRST NATIONAL BANK OF SAN MATEO COUNTY at REDWOOD CITY (a Corporation), Respondent.

DiMaria, DiMaria & Daschbach for Appellants.

Ross & Ross & McGovern for Respondent.

NOURSE, P. J.—This is an action by depositors for the amount of a check credited to their account, but charged back by defendant bank when it found that the funds were insufficient. The court gave judgment for the bank and plaintiffs, depositors, appeal.

The notice of appeal was filed on October 7, 1952, prior to the rendition of judgment and the filing of the findings of fact and conclusions of law, which were all dated October 8, 1952, and filed the same day. However on August 29, 1952, the court had, in an order for judgment, which appellants mistook for the appealable judgment, announced its intended ruling. Under the last provision of rule 2(c) of the Rules on Appeal, added by an amendment effective January 1, 1951, we may in our discretion, for good cause, treat such notice of appeal as filed immediately after entry of the judgment. We shall use this power here considering the general desirability of deciding appeals on the merits, the absence of any indication of prejudice and the failure of respondent to urge dismissal of the appeal.

The facts are mainly undisputed. On December 1, 1948, Mrs. Larrus took to the defendant bank, herein further called the bank, with which she and her husband had had no prior dealings, a check for $1,500 drawn on it by Martini Motors, signed by Eugene Martini, Mrs. Larrus' brother, and made payable to her and her husband. She testified that the check was given in payment of the balance of a loan made by them to Martini. She asked an employee of the bank whether the check was good and was told that it was, the funds in the account then being sufficient. Mrs. Larrus then stated that she wished to open an account in the name of her husband and herself as trustees for their two named sons and to deposit the check in that account. She was told that for the opening of such an account the signature of her husband also was required. She was given a card for him to sign and signed one herself. The cards contained directly above the space for the signature a printed statement that the depositor agreed that the account was to be carried as a savings account and that the funds in it should be governed by the by-laws, regulations, rules and practices of the bank. Her attention was not expressly called to this clause and she was not advised of the contents of the by-laws, rules and regulations. The following morning, December 2, 1948, Mrs. Larrus took the signed cards and the check endorsed in blank by her and her husband back to the bank and was given a savings passbook in which the

amount of the check was entered. The passbook contained printed rules governing savings accounts, which were not called to her attention. The bank records received in evidence show that on December 2, 1948, at the beginning of business there was in the Martini Motors account $2,348.88. On that date there were charged to said account one check of $70, one of $1,875, one of $25 and the Larrus check of $1,500. No deposit was made on it that day. When it was found that by the total of the checks, amounting to $3,470, the account was overdrawn a counter entry of $1,500 was made the same day to cancel the charge of the Larrus check and plaintiffs' savings account was charged with that amount. On December 7, 1948, plaintiffs received a return item advice letter dated December 4, 1948, and bearing a postmark of December 6, 1948, advising them that their account had been charged and that the check was being held for their instructions. Appellants did not react in any way on this notice until they communicated with the bank through their attorneys in 1950.

The main question in dispute is the effectiveness of the crediting of appellants' account with the amount of the check. At that time such matters were governed by section 16c of the Bank Act of 1909 as amended (1 Deering's Gen. Laws, Act 652) which reads in part: ''Any credit allowed by any bank organized under the laws of, or doing business in, this State, for any check, note or other instrument providing for the payment of money and drawn on, through or payable at the same bank in which it is deposited . . . shall be provisional only, subject to final payment . . . provided, that any check, note or other instrument providing for the payment of money and drawn on or payable at the same bank allowing such credit shall either be found good or else returned unpaid, or notice of dishonor duly sent, at or before the end of the next succeeding business day, when such check, note or other instrument has been received during business hours. . . .

''Any provision of this section may be modified or set aside by an agreement in writing between any bank allowing such credit and any party from whom any such check, note or other instrument is received for collection, deposit or other purpose.''

It is undisputed that although the check was received during business hours, the notice was not sent the next succeeding business day. The court below in the order for judgment expressed the opinion that the failure of the bank to give notice of dishonor within the period limited by the act did

not invalidate the revocation of the credit but made the bank liable for injury only suffered by the depositors because of the delay, whereas no such injury was shown. We do not agree. The language of the statute together with the general rules applicable to the payment or crediting of checks by the drawee bank compel the opposite conclusion.

██ Normally " 'A credit given for the amount of a check by the bank upon which it is drawn is equivalent to, and will be treated as, a payment of the check. It is the same as if the money had been paid over the counter on the check, and then immediately paid back again to the account or for the use for which the credit is given.' " (*Utah Const. Co.* v. *Western Pac. Ry. Co.*, 174 Cal. 156, 164-165 [162 P. 631]; *Greenzweight* v. *Title Guar. & Tr. Co.*, 1 Cal.2d 577, 581 [36 P.2d 186]; *Briviesca* v. *Coronado*, 19 Cal.2d 244, 246 [120 P.2d 649]; 7 Am.Jur. 327; 9 C.J.S. 698; 5A Michie, Banks and Banking, Perm. ed. 536-537.) ██ In the absence of fraud of the payee a bank which has paid a check which constituted an overdraft, cannot recover the amount paid from the payee (7 Am.Jur. 443; 9 C.J.S. 723; 5A Michie, *supra*, p. 542; ann. 114 A.L.R. 382, 385 et seq.). Accordingly, the great weight of authority holds that apart from contrary statutory provisions or agreements or fraud or collusion an overdraft when credited to the payee's account in the same bank, cannot be charged back. (7 Am.Jur. 327; 9 C.J.S. 587; 5A Michie, *supra*, 537-538; ann. 114 A.L.R. 382, 387.) This rule does not suit the banks, which can hardly know before the close of the day's business whether the old balance of the drawer's account plus deposits made during the day are sufficient to pay all checks on the account presented during the day. (Compare *National Gold Bank & Tr. Co.* v. *McDonald*, 51 Cal. 64, 69 [21 Am.Rep. 697]; *Ocean Park Bank* v. *Rogers*, 6 Cal.App. 678, 681 [92 P. 879].) The American Bankers Association therefore advocated a statutory provision or a bank rule that credit given to a depositor would be subject to revocation at or before the end of the day of deposit if the check was found not good. (See I Paton's Digest, 1068.) In 1925 such a provision was added to our Bank Code, but it specifically required the return of the check or due notice of dishonor at or before the end of the day of deposit. (Stats. 1925, p. 513, § 16c.) In 1943 this section was amended to give the bank one day more time so that it now reads as quoted before. (Stats. 1943, ch. 930.) The California cases cited for the rule that the crediting of a

deposited check drawn on the same bank constitutes payment are not inconsistent with the above provision of section 16c, if we consider the right of the bank to credit back as based on a condition subsequent. The construction of a proviso as a necessary condition is normal, certainly when the statutory rule which it modifies is in derogation of the common law and there are no indications of another intent. (*McPhail* v. *Nunes*, 38 Cal.App. 557, 560 et seq. [177 P. 193] ; 34 Words and Phrases, 675 et seq.; 702 et seq.) The same construction of this proviso as a necessary condition seems accepted in *Hansen* v. *Bank of America*, 101 Cal.App.2d 300, 304 [225 P.2d 665], although there it is dictum as the notice was timely given.

 The question remains whether the statutory time limit on return of the check or notice of dishonor as condition for charging back has been set aside by an agreement in writing of the parties, or the equivalent, consisting of the cards signed plus the printed rules in the passbook. Appellants contend that these rules cannot be binding on them because they were not brought to their attention at the time they signed the cards. This is not so. There is no reason why a depositor cannot expressly agree in writing to be bound by the rules of the bank for such relation even though he does not know their contents, insofar as the rules are not unreasonable or contrary to law or public policy. The general principle is thus expressed by Corbin (Contracts, vol. 3, p. 420) : "It is quite possible for a party to assent to be bound in accordance with terms of which he is then ignorant, just as he may promise to pay a sum yet to be determined by the future market or by an arbitrator." (Compare, also, Restatement, Contracts, § 70.) For the binding effect of the signing of such a clause by a depositor see *Krupp* v. *Franklin Sav. Bank in City of New York*, 255 App.Div. 15 [5 N.Y.S.2d 365] ; *Koutsis* v. *Zion's Sav. Bank & Trust Co.*, 63 Utah 254 [225 P. 339] ; *Fourth & Central Trust Co.* v. *Rowe*, 122 Ohio St. 1 [170 N.E. 439] ; I Williston, Contracts, rev. ed., page 259.

 Here the clause is clearly printed in the only sentence on the face of the signature card. The card was not printed in such a manner that it tended to conceal the fact that it was an express acceptance of the bank's rules and regulations. Plaintiffs, who had the cards overnight at their home, had the opportunity to read the short text just above

the spaces for their signatures and to ask for the rules and regulations it referred to if they did not wish to subject themselves to them in ignorance of their contents. Having signed and returned the cards without doing so they are bound. (Compare *George* v. *Bekins Van & Storage Co.*, 33 Cal.2d 834, 848 [205 P.2d 1037].) Appellant relies on *Los Angeles Inv. Co.* v. *Home Sav. Bank*, 180 Cal. 601 [182 P. 293, 5 A.L.R. 1193]; *Sommer* v. *Bank of Italy etc. Assn.*, 109 Cal.App. 370 [293 P. 98], and *Frankini* v. *Bank of America*, 31 Cal.App.2d 666 [88 P.2d 790], but these cases can easily be distinguished. In the first two cases there was no express agreement to be bound by the bank's rules and regulations. The Los Angeles Inv. Co. case indicates at most that California does not follow the majority rule which holds that a depositor who accepts and retains a passbook containing printed rules is deemed by that fact alone to acquiesce therein (see ann. to that case, 5 A.L.R. 1203), but it does not decide anything with respect to express acceptance on a signature card. The Sommer case relating to a not well-proved provision on some monthly statements is still less in point. The Frankini case was decided on the ground that the rule on which the bank relied was unreasonable.

The relevant provision of the rules in the instant case is as follows: ''Any credit allowed for items on this or any other bank or party is only provisional, and until the proceeds thereof, in money, shall have been actually received by this bank, and found good at the close of the day's business, such items may be charged back to the depositor's account, regardless of whether or not the item itself can be returned.'' We see nothing unreasonable in this provision. It is in accord with the recommendation in I Paton's Digest, 1068, *supra*, and section 3 of the Bank Collection Code, adopted by several states (7 Am.Jur. 512). Our section 16c of the Bank Act differed from it by the time limit set for notification but it expressly permits setting aside or modification by written agreement.

We are satisfied that when the appellants executed the signature card agreeing to be bound by all the rules and regulations of the bank they did so for the purpose of leading the bank to believe that they accepted all those conditions. If these transactions may not be held a ''written agreement'' within the strict terms of section 16c of the Bank Act they, nevertheless, bring the same result to all intent and purposes

insofar as appellants are concerned. That is to say that appellants knowingly and intentionally, by their own act and deed, led the bank to believe that they were willingly agreeing to abide by *all* the rules and regulations concerning the terms of their deposit. They are therefore estopped to deny it at this time.

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.