**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE RANDALL HOLL,

RANDALL HOLL, individually, on behalf of others similarly situated, and as a representative of the class,
*Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND,
*Respondent*,

UNITED PARCEL SERVICE, INC.,
*Real Party in Interest.*

No. 18-70568

D.C. No. 4:16-cv-05856-HSG

OPINION

Petition for Writ of Mandamus

Argued and Submitted April 19, 2019
San Francisco, California

Filed May 30, 2019

Before:  Michael Daly Hawkins and Milan D. Smith, Jr., Circuit Judges, and Barbara M. G. Lynn,[*] District Judge.

Opinion by Judge Hawkins

**SUMMARY**[**]

**Mandamus / Arbitration**

The panel denied a petition for a writ of mandamus seeking to vacate the district court's order compelling arbitration of claims that United Parcel Service, Inc., overcharged retail customers who shipped packages through third-party facilities.

Applying California law, the district court determined that the plaintiff and UPS entered into a binding arbitration agreement.  The panel held that the district court's order was not clearly erroneous as a matter of law, and so the extraordinary remedy of mandamus was not warranted, because the plaintiff assented to online terms that incorporated the document containing the arbitration clause in question.

[*] The Honorable Barbara M. G. Lynn, Chief United States District Judge for the Northern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Adam W. Hansen (argued), Apollo Law LLC, Minneapolis, Minnesota; Matthew C. Helland, Nichols Kaster LLP, San Francisco, California; Brock J. Specht and Kai H. Richter, Nichols Kaster LLP, Minneapolis, Minnesota; for Petitioner.

Deanne E. Maynard (argued), Morrison & Foerster LLP, Washington, D.C.; Benjamin J. Fox and Gregory B. Koltun, Morrison & Foerster LLP, Los Angeles, California; Joel Jacinto Ramirez, James R. Sigel, and Stacey M. Sprenkel, Morrison & Foerster LLP, San Francisco, California; for Real Party in Interest.

Anne Richardson and Magdalena Reyes Bordeaux, Public Counsel, Los Angeles, California, for Amici Curiae Public Counsel, Public Good Law Center, and Public Law Center.

## OPINION

HAWKINS, Senior Circuit Judge:

This case tests the outer limits of what constitutes a "reasonably conspicuous" provision as part of the terms of usage so prevalent in the adhesion contracts of modern internet commerce. Here, Randall Holl employs the extraordinary writ of mandamus to test the district court's conclusion that United Parcel Service, Inc.'s ("UPS's") arbitration provision passed muster. Viewing Holl's challenge through the lens of the strict requirements of *Bauman v. United States District Court*, 557 F.2d 650, 654–55 (9th Cir. 1977), we deny the writ, noting that UPS has since made its arbitration provision more apparent.

## BACKGROUND

On June 28, 2016, Holl shipped a package from the UPS Store in Healdsburg, California to Big Lake, Minnesota. The store charged an additional fee of $5.92 based on the shipment's remote destination (the "Delivery Area Surcharge"). According to Holl, the Delivery Area Surcharge for this shipment should have been $3.15 as advertised in UPS's Retail Rates. Based on the rate discrepancy, Holl filed a putative class action complaint against UPS, alleging that the company systematically overcharges retail customers shipping packages through third-party facilities by applying Delivery Surcharge Rates higher than the rates UPS advertised.

UPS moved to compel arbitration of Holl's individual claims under the Federal Arbitration Act. UPS argued that, before making the shipment that gives rise to his claims in this litigation, Holl enrolled in the UPS My Choice program—a free, optional program that allows UPS customers to track and manage deliveries—and, in doing so, agreed to arbitrate all claims relating to UPS's shipping services.

Here is the path a user like Holl would take to get to the arbitration clause while enrolling in the UPS My Choice program. The user first encounters the following enrollment page:



All users have to click on the box, affirmatively indicating assent to the UPS Technology Agreement and the UPS My Choice Service Terms, in order to continue the enrollment process. Although Holl has "no memory of reading any of UPS's terms in the course of signing up" for My Choice, the

blue "UPS Technology Agreement" and "UPS My Choice Service Terms" text depicted above hyperlinks to the controlling versions of the agreements.

The "UPS Technology Agreement" hyperlink directs the user to a 96-page document that "grants [the My Choice user] . . . a limited, revocable, non-sublicenseable, non-exclusive, non-transferable, license to use the UPS Technology and associated Technical Documentation in the Permitted Territory for such UPS Technology." Section 12.6 of that Agreement, entitled "Governing Law; Jurisdiction and Language," provides:

> The exclusive jurisdiction for any claim, case, or controversy arising out of or relating to this Agreement (whether for breach of contract, tort or otherwise) shall be a federal or state court in Atlanta, Georgia, and the parties hereby consent to such exclusive jurisdiction and irrevocably waive and shall not assert any defenses based on lack of in personam jurisdiction, improper venue or inconvenient forum.

Exhibit B to the Agreement, however, specifies that for customers in "Middle Eastern Countries" all disputes "arising out of or in connection with th[e] Agreement . . . shall be referred to and finally resolved by arbitration." Otherwise, the UPS Technology Agreement does not contain a generally applicable arbitration clause.

The UPS My Choice Service Terms hyperlink directs the user to a three-page document consisting of nine numbered paragraphs. Those paragraphs do not mention arbitration, but the very first section incorporates several other documents by reference:

**(1)   Governing Terms.**   These Service Terms ("Terms") govern your use of UPS My Choice services (the "Service").  Except as modified by these Terms, the UPS Tariff/Terms and Conditions of Service, the UPS Rate and Service Guide and the description of the Service available at ups.com/mychoice in effect at the time of service (all of which are subject to change without notice) govern the Service, and are expressly incorporated here by this reference. The most current and controlling versions of the UPS Tariff/Terms and Conditions of Service and the UPS Rate and Service Guide are published at ups.com.  You expressly acknowledge having reviewed, understood and agreed to the UPS Tariff/Terms and Conditions of Service and the UPS Rate and Service Guide and accept their application. In the case of a conflict between the terms of the UPS Tariff/Terms and Conditions of Service or the UPS Rate and Service Guide on the one hand, and these Terms on the other, these Terms shall control as to the Service.

By using the Service, you agree to these Terms.

The My Choice Service Terms do not contain hyperlinks to the referenced documents, but the documents are available on ups.com.

To access the first referenced document—UPS Tariff/Terms and Conditions of Service—on ups.com, a user

must follow the "Service Terms and Conditions" link that appears at the bottom of the website.  Once selected, the "Service Terms and Conditions" link directs the user to the following page:



The UPS Tariff/Terms and Conditions of Service link directs the user to the version of the terms in effect at the time.[1]

The UPS Tariff/Terms and Conditions of Service span 32 pages and "contain[] the general terms and conditions of contract" under which UPS and its affiliates transport shipments.  The Table of Contents indicates that Section 52 is entitled "Claims and Legal Actions: Individual Binding Arbitration of Claims."  In relevant part, Section 52 provides in bold print:

---

[1] The UPS Rate and Service Guide, the other document incorporated in the My Choice Service Terms, is a 367-page document that informs customers about choosing services, preparing shipments, determining the rates for shipments, and tracking and payment of shipments.  In its final section, the Rate and Service Guide sets forth the UPS Tariff/Terms and Conditions of Service in their entirety, including the arbitration provision.

> Claimant and UPS agree that, except for disputes that qualify for state courts of limited jurisdiction (such as small claims, justice of the peace, magistrate court, and similar courts with monetary limits on their jurisdictions over civil disputes), any controversy or claim, whether at law or equity, arising out of or related to the provision of services by UPS, regardless of the date of accrual of such dispute, shall be resolved in its entirety by individual (not class-wide nor collective) binding arbitration.

The paragraphs following this bolded text contain information about arbitration and specific waivers, including an acknowledgment of the class representation and participation waiver.

The ups.com Service Terms and Conditions page depicted above also contains a link entitled "Claims and Legal Actions: Individual Binding Arbitration of Claims." That link directs a user to a page that (1) explains "[t]he UPS Tariff/Terms and Conditions of Service . . . include an Agreement to Arbitrate Claims, providing for binding arbitration of claims (except as otherwise provided)," and (2) provides a downloadable version of the arbitration provision. It is this arbitration provision contained in the UPS Tariff/Terms and Conditions of Service on which UPS relied to compel arbitration in these proceedings.

Before the district court, Holl conceded that he checked the box indicating his agreement to the UPS My Choice Service Terms and the UPS Technology Agreement when enrolling in the My Choice program. Nevertheless, he contended that he could not be bound by the arbitration

clause contained therein for two primary reasons: (1) the arbitration provision was so inconspicuous that no reasonable user would be on notice of its existence, and (2) the arbitration provision conflicted with the jurisdictional provision of the UPS Technology Agreement such that there could not have been a meeting of the minds as to a dispute resolution process. The district court disagreed and granted UPS's motion to compel arbitration and stay proceedings. Holl then filed a petition for a writ of mandamus asking our court to vacate the order compelling arbitration.

## DISCUSSION

The All Writs Act confers our jurisdiction to issue writs of mandamus. 28 U.S.C. § 1651. Mandamus is an extraordinary remedy, and "only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this remedy." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004) (internal quotation marks and citations omitted). To determine whether mandamus is warranted, we weigh five non-exhaustive factors assessing whether:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires[;] (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal[;] (3) The district court's order is clearly erroneous as a matter of law[;] (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules[;] [and] (5) The district court's order raises new and important problems, or issues . . . of first impression.

*Bauman*, 557 F.2d at 654–55 (citations omitted). A petitioner must satisfy the third *Bauman* factor—clear error—but need not satisfy all five factors at once. *In re Henson*, 869 F.3d 1052, 1058 (9th Cir. 2017). Even if the petitioner satisfies all five factors, it is within our discretion to grant or deny the petition. *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1099 (9th Cir. 1999).

Because we cannot grant the extraordinary remedy that Holl seeks absent a "definite and firm conviction that a mistake has been committed," *United States v. Fei Ye*, 436 F.3d 1117, 1123 (9th Cir. 2006), we look first to the district court's determination that the parties entered into a valid arbitration agreement. We hold that the district court's order is not "clearly erroneous as a matter of law," and therefore need not reach the remaining *Bauman* factors. *See Henson*, 869 F.3d at 1058.

The issue before the district court was one of basic contract formation. *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). Indeed, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). State law, here the law of California, supplies the relevant contract principles to determine whether Holl and UPS entered into a binding arbitration agreement. *See Norcia*, 845 F.3d at 1283.

Under California law, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972). Yet, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he

was unaware, contained in a document whose contractual nature is not obvious." *Id.*; *see also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (applying California law). There is no special rule, however, that an offeror of an adhesive consumer contract specifically highlight or otherwise bring an arbitration clause to the attention of the consumer to render the clause enforceable. *See Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 914 (2015).

As the district court recognized, locating the arbitration clause at issue here requires several steps and a fair amount of web-browsing intuition. The user must access the UPS My Choice Service Terms via the enrollment page's hyperlink, potentially after following the first hyperlink to the 96-page Technology Agreement. The user must then read the UPS My Choice Service Terms and understand that they incorporate the UPS Tariff/Terms and Conditions of Service. Because the My Choice Service Terms do not include hyperlinks to the incorporated documents, the user must visit the full ups.com website, intuitively find the Service Terms and Conditions link at the bottom of the webpage, select it, and locate yet another link to the UPS Tariff/Terms and Conditions of Service. Then, the user must read the UPS Tariff/Terms and Conditions of Service to find the arbitration clause.

The task of the district court below, and our task in these mandamus proceedings, would be much easier if we were reviewing the current My Choice Service Terms. The My Choice Service Terms now include a hyperlink to the UPS Tariff/Terms and Conditions of Service and expressly inform the user that the incorporated document contains an agreement to arbitrate. But, even under the version of the My Choice Service Terms in effect at the time of Holl's

enrollment, the district court's determination regarding the arbitration provision's validity does not warrant the extraordinary remedy of mandamus.

The rules of consumer online agreements and consumer paper agreements are the same. *See Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862 (2016). A contract may incorporate documents and terms by reference. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997). Where it is clear that a party is assenting to a contract that incorporates other documents by reference, the incorporation is valid—and the terms of the incorporated document are binding—so long as the incorporation is "clear and unequivocal, the reference [is] called to the attention of the other party and he [] consent[s] thereto, and the terms of the incorporated document [are] known or easily available to the contracting parties." *Id.* (quoting *Williams Constr. Co. v. Standard–Pac. Corp.*, 254 Cal. App. 2d 442, 454 (1967)).

Here, there is no question Holl affirmatively assented to the UPS My Choice Service Terms. He checked a box acknowledging as much. So, if the UPS My Choice Service Terms validly incorporate the UPS Tariff/Terms and Conditions of Service, his assent encompassed the arbitration clause. *See id.* at 54–55.

We cannot say, with "definite and firm conviction," that the district court erred by finding the incorporation valid. *Fei Ye*, 436 F.3d at 1123. The incorporation appears in the very first section of the My Choice Service Terms, which span only three pages. That section states in clear language that (1) the UPS Tariff/Terms and Conditions of Service "are expressly incorporated," (2) the most current version of the document is published on ups.com, and (3) the user expressly acknowledges having "reviewed, understood and agree[d] to the UPS Tariff/Terms and Conditions of

Service." It is undisputed that, at all relevant times, users could access the UPS Tariff/Terms and Conditions of Service on ups.com, as the My Choice Service Terms instruct.

In the context of paper transactions, California courts have deemed analogous incorporations by reference valid and the incorporated terms binding. *See, e.g.*, *Wolschlager v. Fid. Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 791 (2003) (arbitration provision in policy binding where preliminary title report clearly incorporated policy and "directed the plaintiff to where he could inspect it"); *King v. Larsen Realty, Inc.*, 121 Cal. App. 3d 349, 353, 357 (1981) (arbitration clause contained in bylaws binding where plaintiffs expressly agreed to abide by the board's constitution and bylaws when applying for membership and bylaws were readily available for review); *Larrus v. First Nat'l Bank of San Mateo Cty.*, 122 Cal. App. 2d 884, 889–90 (1954) (bank's rules and regulations binding where bank card clearly stated plaintiff agreed to rules by signing and plaintiff could have asked to review rules before signing).

Federal courts likewise have recognized the general enforceability of similar online agreements that require affirmative user assent. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78–79 (2d Cir. 2017) (applying California law and determining user assented to arbitration provision contained in online Terms of Service where enrollment page clearly stated user's enrollment signaled assent to terms and terms were reasonably conspicuous even though lengthy); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) ("[C]ourts have consistently enforced [terms of use] agreements where the user had actual notice of the agreement. . . . [or] where the user is required to

affirmatively acknowledge the agreement before proceeding with use of the [service.]").

Despite Holl's urging, the characteristics of the UPS Technology Agreement—its length; incorporation of rules, regulations, and documents by reference; and inclusion of a jurisdictional provision—do not alter our assessment of the district court's holding. The UPS Technology Agreement grants licenses for the use of certain technology and sets forth terms and conditions "that apply to each UPS Technology [a UPS My Choice member] may use." According to the Technology Agreement's plain language, its jurisdictional clause applies only to claims arising out of or relating to the Technology Agreement itself. The use of UPS services remains governed by any agreement the user enters with UPS in connection with those services, "including for example, the applicable UPS Terms and Conditions of Carriage/Service." Given the expressly stated scope of the Technology Agreement, the district court did not clearly err by determining that the Technology Agreement's jurisdictional clause and the My Choice Service Terms' incorporated arbitration clause cover different subject matters and thus are not in conflict.

Because Holl unequivocally assented to the My Choice Service Terms and those terms clearly incorporated the document containing the arbitration clause in question, we are not left with the definite and firm conviction that the district court erred in a manner sufficient to justify mandamus.

## CONCLUSION

Faced with the heavy burden of showing a "clear and indisputable" right to the extraordinary remedy he seeks, Holl fails to establish the type of "judicial usurpation of

power" or "clear abuse of discretion" that might justify issuance of the writ. *In re Van Dusen*, 654 F.3d 838, 840–41 (9th Cir. 2011). Therefore, we deny his petition.

**DENIED.**