**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| PETER FONG; SUT FONG, | No. 23-16186 |
| Plaintiffs-Appellants, | D.C. No.<br>2:22-cv-01291-MCE-KJN |
| v. | |
| U.S. BANCORP; U.S. BANK<br>NATIONAL ASSOCIATION, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted June 12, 2024
Pasadena, California

Before:  W. FLETCHER, CHRISTEN, and VANDYKE, Circuit Judges.
Partial Dissent by Judge VANDYKE.

Plaintiff-Appellants Peter Fong and Sut Fong opened a safe deposit box at a

U.S. Bank branch ("the branch") in Sacramento in 2000.  They stored a substantial

amount of cash, gold, and jewelry in the box.  In 2013, the branch had trouble

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

opening the door to the slot where the Fongs' box was stored because the branch's key did not work properly. The branch asked the Fongs to move the box to a new slot that had different keys. The Fongs came to the branch, signed a one-page "Consumer Safe Deposit Box Contract," and moved their box to the new slot assigned to them by the branch.

In 2021, the Fongs were notified by law enforcement that their safe deposit box had been "drilled." They went to the branch and discovered that many of the valuables they had stored in the box were missing. The Fongs sued Defendant-Appellees U.S. Bank National Association and U.S. Bancorp (together, "U.S. Bank") in federal court. The district court granted U.S. Bank's motion to compel arbitration and dismissed the case. We have jurisdiction under 28 U.S.C. § 1291. We vacate and remand.

"We review the district court's order compelling arbitration de novo." *Ahlstrom v. DHI Mortg. Co., Ltd.*, *L.P.*, 21 F.4th 631, 634 (9th Cir. 2021). "We also review 'legal conclusions regarding the existence of a valid, binding contract de novo.'" *Id.* (quoting *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016)).

The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence."

2

*Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  The parties

agree that California contract law controls whether they agreed to arbitrate.  *See id*.

California law provides:

> For the terms of another document to be incorporated
> into the document executed by the parties [1] the
> reference must be clear and unequivocal, [2] the
> reference must be called to the attention of the other party
> and he must consent thereto, and [3] the terms of the
> incorporated document must be known or easily available
> to the contracting parties.

*Shaw v. Regents of the Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997) (bracketed

numbers added); *see also In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) (quoting

*Shaw*).

U.S. Bank argues that the Fongs agreed to arbitrate because the one-page

Safe Deposit Box Contract they signed in 2013 incorporated by reference an

arbitration provision contained in a separate document, the "Safe Deposit Box

Lease Agreement."  The Safe Deposit Box Contract provided, in relevant part:

> The undersigned Renter(s) hereby rent the safe deposit
> box described in this agreement.  Renter(s) agrees to the
> terms of the "Safe Deposit Box Lease Agreement", as
> amended from time to time (the "Rules"), including the
> payment of rental fees in advance. . . . The Rules are
> incorporated herein by reference and made a part of this
> agreement.  By signing, Renter(s) acknowledge receipt of
> two keys, a copy of the present Rules, and understand

3

that FDIC-insurance of the Bank's insurance policy does
not cover safe deposit boxes and their contents.

U.S. Bank has not shown that the Safe Deposit Box Lease Agreement was "called to the attention" of the Fongs or "easily available" to the Fongs when they signed the Safe Deposit Box Contract. *See Shaw*, 58 Cal. App. 4th at 54. First, it would not have been clear to a reasonable consumer under the circumstances that the Safe Deposit Box Contract represented a new agreement. *See id.* ("[E]ach case must turn on its facts."). The Fongs did not come to the branch to open a new account or to get a new safe deposit box; they had kept a box at the branch for thirteen years. Rather, the branch asked the Fongs to come because its key did not work for the slot in which the Fongs' box had been placed. So far as the Fongs were concerned, they were signing paperwork, at the branch's request, to get a new slot for their existing box. Under these circumstances, it would have been reasonable for the Fongs to understand that the term "Safe Deposit Box Lease Agreement" referred to the prior agreement the parties entered when the Fongs opened their safe deposit box in 2000.[1] U.S. Bank does not explain why the Fongs should have understood that the one-page Safety Deposit Box Contract

---

[1]The parties' prior agreement is not in the record, and there is no indication it contained an arbitration provision.

represented an entirely new agreement that incorporated a separate document the

Fongs had never seen.[2]

Second, there is a genuine dispute of material fact as to whether the branch

provided the Safe Deposit Box Lease Agreement to the Fongs. *See Hansen v. LMB*

*Mortg. Servs., Inc.,* 1 F.4th 667, 670 (9th Cir. 2021) (explaining that the summary

judgment standard in Federal Rule of Civil Procedure 56 applies when the

formation of an agreement to arbitrate is at issue). The U.S. Bank employee who

assisted the Fongs in 2013 submitted a sworn declaration stating that it is her

normal procedure to provide the longer document containing the Safe Deposit Box

Lease Agreement to customers who open new safe deposit boxes. But she has no

actual recollection of assisting the Fongs. Both of the Fongs signed sworn

declarations stating that when they came to the branch they were given no

---

[2]The dissent observes that the Fongs did not raise this precise argument in their briefing. However, the Fongs argued that they had an account with U.S. Bank since 2000 and signed the one-page contract in 2013 only "because they were moving their box to a different slot with different keys." Moreover, "[t]he party presentation principle is supple, not ironclad," and there are "circumstances in which a modest initiating role for a court is appropriate." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020); *see also Does v. Wasden*, 982 F.3d 784, 793 (9th Cir. 2020) ("[I]t is a longstanding principle that 'when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.'") (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)) .

documents other than the one-page Safe Deposit Box Contract. Because it would have been reasonable for the Fongs to understand that the one-page form referred to the parties' prior agreement, there was no reason for the Fongs to request the separate document referenced in the form. If the Fongs' declarations are believed, the U.S. Bank employee who assisted them in 2013 knew, despite the language in the one-page form signed by the Fongs, that they had not, in fact, been provided a copy of the Safe Deposit Box Lease Agreement.

Those circumstances distinguish this case from *Larrus v. First Nat'l Bank of San Mateo Cnty.*, 122 Cal. App. 2d 884 (1954). In *Larrus*, the plaintiffs "had had no prior dealings" with the bank; they completed signature cards to open a new account. *Id.* at 886. They also "had the cards overnight at their home," and thus "had the opportunity to read the short text just above the space for their signatures and to ask for the rules and regulations referred to if they did not wish to subject themselves to them in ignorance of their contents." *Id.* at 889–90.

If the Fongs' declarations are believed, they are not bound by the arbitration agreement contained in the Safe Deposit Box Lease Agreement. We vacate the order compelling arbitration and remand to the district court for further proceedings consistent with this disposition.

**VACATED and REMANDED.**

6

*Peter Fong, et al. v. U.S. Bancorp, et al.*, No. 23-16186
VANDYKE, Circuit Judge, dissenting in part:

I respectfully disagree with the majority's conclusion that the Safe Deposit

Box Lease agreement was not properly incorporated into the contract that Peter and

Sut Fong signed when they moved their safe deposit box. Instead, I think the Fongs

agreed to arbitrate when they signed the Consumer Safe Deposit Box Contract.

Because I also believe their other arguments on appeal are unavailing, I would affirm

the district court's reasoning.[1]

1. As the majority explains, under California law, "[a] contract may

incorporate documents and terms by reference … so long as the incorporation is

clear and unequivocal, the reference is called to the attention of the other party and

he consents thereto, and the terms of the incorporated document are known or easily

available to the contracting parties." *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019)

(cleaned up). Here, the Fongs each signed the Consumer Safe Deposit Box Contract,

which stated that the "Rules are incorporated herein by reference," and defined "the

'Rules'" as "the 'Safe Deposit Box Lease Agreement', as amended from time to

---

[1] After the parties finished briefing this case the Supreme Court decided *Smith v. Spizzirri*, 144 S. Ct. 1173 (2024), which holds that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Id*. at 1178. Because *Smith* may affect whether this case should have been stayed instead of dismissed, I would remand for the district court to address that question in the first instance.

time." So by signing the Consumer Safe Deposit Box Contract, the Fongs agreed to be bound by the Safe Deposit Box Lease agreement, which contained an arbitration provision.

The majority reasons that the Safe Deposit Box Lease Agreement was not incorporated because (1) the Fongs may have understood the Safe Deposit Box Contract to incorporate a prior agreement between the parties from when the Fongs originally opened their box in 2000; and (2) there is a genuine dispute as to whether the bank provided the Safe Deposit Box Lease Agreement to the Fongs.

To start, the Fongs did not argue that they understood the contract to be referring to some earlier agreement. *See United States v. Sineneng Smith*, 590 U.S. 371, 375 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation."). The Fongs argue only that because both documents have "Safe Deposit Box" in the title and "Agreement" is synonymous with "Contract," the incorporation provision could be read to refer only to the one-page Consumer Safe Deposit Box Contract. But it would make little sense for a document to "incorporate[] herein by reference" itself. Indeed, the majority implicitly recognizes this by refusing to rely on the incorporation argument actually made by the Fongs.

Even if the Fongs had argued that the Consumer Safe Deposit Box could have been read to refer to some other agreement they made when they first opened the box, as the majority acknowledges, there is no other such agreement in the record.

2

We do not even know that a prior agreement exists, let alone what it was titled or what it said. As far as we know, there may not have been any earlier written contract at all. If so, would it still have been reasonable for the Fongs to read "The Rules are incorporated herein by reference" to refer to an earlier written contract that did not exist? What if the earlier agreement was titled something like "Terms and Conditions," not "Lease Agreement"? Would it still be reasonable then to assume the Contract's reference to the "Safe Deposit Box Lease Agreement" referred to an earlier document with a completely different title? We simply do not know anything about a potential earlier contract because none is in the record. It is pure speculation by the majority to assume that such an agreement existed and could have been confused for the "Safe Deposit Box Lease Agreement" or even "the 'Rules'" referenced in the Consumer Safe Deposit Box Contract—particularly speculative since, as mentioned, the Fongs never made that argument. It's one thing to assume the truth of the plaintiffs' allegations at this stage. It's something else entirely, as the majority does here, to make and rely on facts the plaintiffs never alleged and arguments they never made.

The majority's second argument is no better. The majority determines that because the Fongs' declarations insisted that they never received a copy of the Safe Deposit Box Lease Agreement, we must assume they never received one. I agree that we must take the Fongs at their word at this stage, but I note that even from the

3

Fongs' perspective, there is a dispute of fact. The Fongs *in their declarations* claim they never received the Safe Deposit Box Lease Agreement, but they also provided the Consumer Safe Deposit Box Contract, which they signed "acknowledge[ing] receipt of … the present Rules," which are defined as the "Safe Deposit Box Lease Agreement." So the Fongs both claim now to never have received the Lease Agreement but signed that they did in fact receive the Lease Agreement.

But more importantly, California law does not require that a document be given to the contracting party in order to be incorporated into the contract—only that it be "easily available." *See In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019); *see also Larrus v. First Nat'l Bank of San Mateo Cnty.*, 122 Cal. App. 2d 884, 889–90 (Cal. Ct. App. 1954) (holding incorporation valid where plaintiffs "had the opportunity to read the short text just above the spaces for their signatures and to ask for the rules and regulations it referred to"). Here, even if the Fongs did not receive the Consumer Safe Deposit Box Lease Agreement, they have not shown a dispute of fact as to whether the branch *would have given them one* had they asked. To the contrary, the Bank provided a declaration from the employee who signed the Fongs' Consumer Safe Deposit Box Contract that it is her normal practice to provide customers with a copy of the Lease Agreement. While we cannot use this declaration to draw the conclusion that the employee provided them the agreement, we can draw the undisputed inference that, had the Fongs asked, she would have provided it. To

4

reach the opposite conclusion, the majority again relies on the completely speculative idea that the Fongs had "no reason" to request the Lease Agreement if they thought the Contract only incorporated some prior agreement that is not in the record and never argued by either party.

Finally, the majority seems to briefly suggest that the Fongs may not have known they were signing a contract at all, and that they instead thought they were only "signing paperwork, at the branch's request, to get a new slot for their existing box." What a reasonable person would think that paperwork could be other than some sort of agreement to terms regarding the box is unclear. But more importantly, this is, again, not an argument that the Fongs made in their briefs to us. *See Sineneng-Smith*, 590 U.S. at 375. The Fongs do not argue that they did not know they were signing a contract and they do not argue that they did not consent to the one-page Consumer Safe Deposit Box Contract. They argue only that the one-page contract somehow could be read as incorporating only itself, which, as discussed above, is an implausible argument that even the majority does not rely on.

2. Because the majority determines that the arbitration provision was not properly incorporated, it does not address the other two issues on appeal. But in my view, those arguments also do not merit relief.

First, Appellees did not waive their right to arbitrate. To prove waiver, the Fongs "must demonstrate: (1) knowledge of an existing right to compel arbitration

5

and (2) intentional acts inconsistent with that existing right." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). The Bank's response to the Fong's Consumer Financial Protection Bureau inquiry stating that if the Fongs "wish to request a copy of any available video surveillance, [they] may do so with a court issued subpoena in writing," does not amount to Appellees "actively litigat[ing] the merits of a case," let alone "for a prolonged period of time in order to take advantage of being in court." *Newirth by & through Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019).

Second, U.S. Bancorp may enforce the arbitration agreement. "[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (quotation omitted). "Under California law, a party that is not otherwise subject to an arbitration agreement will be equitably estopped from avoiding arbitration" in some circumstances. *Id*. Here, each of the Fongs' claims are against both USBNA and U.S. Bancorp, and each arise out of the Bank's actions surrounding the Fongs' safe deposit box. The claims against U.S. Bancorp are thus "based on the same facts and inherently inseparable from arbitrable claims against" USBNA, and the Fongs may not avoid arbitration with U.S. Bancorp. *Id*. at 1231 (quotation omitted).

Because I believe the district court properly granted Appellee's motion to compel arbitration, I respectfully dissent.